UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PLAIN LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al., | CIVIL ACTION NO. 2:19-CV-05086 |
| Plaintiffs, | JUDGE MICHAEL WATSON |
| v. | |
| MIKE DEWINE, et al., | |
| Defendants. | |

## PLAINTIFFS' BRIEF REGARDING STANDING AND RIPENESS

Amanda Martinsek (0058567)
William D. Edwards (0062861)
Timothy J. Downing (0042396)
Daniela Paez (0091212)
Trevor J. Hardy (0091065)
ULMER & BERNE LLP
Skylight Office Tower
1660 West 2nd Street - Suite 1100
Cleveland, Ohio 44113-1448
(216) 583-7000 / Fax: (216) 583-7001
amartinsek@ulmer.com
wdedwards@ulmer.com
tdowning@ulmer.com
dpaez@ulmer.com

Rex A. Littrell (0042419)
Rachael Rodman (0073872)
ULMER & BERNE LLP
65 East State Street, Suite 1100
Columbus, Ohio 43215-4213
Phone: (614) 229-0000 / Fax: (614) 229-0001
rlittrell@ulmer.com
rrodman@ulmer.com

*Attorneys for Plaintiffs*

## INTRODUCTION

On December 3, 2019, the Court ordered briefing on the issue of whether the claims asserted in this lawsuit are ripe and whether Plaintiffs have standing to assert those claims. *See* December 3, 2019 Order, ECF No. 13 (the "Order") (ordering the parties "to brief the standing/ripeness issue . . .").

The answer to both questions is yes. Plaintiffs have standing and the claims before the Court are ripe because Plaintiff Plain Local School District Board of Education ("Plain Local Schools") and all Plain Local Schools students, including C.L., J.L., B.H., and C.H., face imminent injury as a result of Ohio Revised Code ("R.C.") § 3311.242 (the "Fast-Track Transfer Statute").[1]

The requirements of ripeness and standing both derive from Article III of the U.S. Constitution, which limits the federal courts to hearing only concrete cases and controversies. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). The doctrine of ripeness requires the Court to determine whether a particular case was brought at the proper time; if it was brought prematurely, then the case is not ripe. *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985) ("[R]ipeness is peculiarly a question of timing." (quoting *Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 335, 357 (1974) (internal quotation marks omitted)). Meanwhile, the doctrine of standing "seeks to ensure the plaintiff has a 'personal stake in the outcome of the controversy.'" *Sumpter v. Wayne Cty.*, 868 F.3d 473, 490 (6th Cir. 2017) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016) ("[the standing] doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.").

---

[1] A copy of the Fast-Track Transfer Statute is attached as Exhibit 1, ECF No. 18-2, to Plaintiffs' First Amended Verified Complaint ("FAC"), ECF No. 18.

"Although standing and ripeness are considered separate issues, in practice they involve overlapping inquiries." *Kardules v. City of Columbus*, 95 F.3d 1335, 1343 (6th Cir. 1996); *Adult Video Ass'n v. U.S. Dep't of Justice,* 71 F.3d 563, 567 (6th Cir. 1995). This overlap is particularly likely to occur when a dispute arises as to whether the plaintiff's injury is sufficiently imminent to invoke the jurisdiction of the federal court. *See, e.g., Susan B. Anthony List*, 573 U.S. at 158 n.5 ("[T]he Article III standing and ripeness issues in this case 'boil down to the same question'"); *Kardules*, 95 F.3d at 1343-44.

The requirements of ripeness and standing are both satisfied here. Plain Local Schools and all of its students, including Plaintiffs C.L., J.L., B.H., and C.H. face imminent injury from the adoption and execution of the Fast-Track Transfer Statute, which vests electors in Eligible Townships, as defined in the statute, with unfettered discretion to transfer from Plain Local Schools to an adjoining school district. Plain Local Schools has already received two transfer requests under the Fast-Track Transfer Statute, which have set in motion a chain of events that will inevitably result in the effectuation of the proposed transfers given: (1) the number of signatures on each transfer request; and (2) the mandatory language in the Fast-Track Transfer Statute, which divests everyone but the residents seeking to transfer—including the State Board—of any discretion to prevent the transfer.[2]

If the Fast-Track Transfer Statute and any requests submitted pursuant to it are not

---

[2] On October 29, 2019, the Law Director for Hills & Dales delivered a request to transfer the Village of Hills and Dales from Plain Local Schools to Jackson Schools (the "2019 Hills & Dales Request"). FAC ¶ 14. On November 6, 2019, Plain Local Schools received another transfer request pursuant to R.C. § 3311.242 (the "Irondale Request"), seeking a transfer of properties located on Irondale Circle in North Canton, Ohio to North Canton Schools. *Id*. To the extent those petitions are procedurally flawed, any such defects can be corrected and do not alter the inevitable sequence of events under the Fast-Track Transfer Statute. Nor would any flaws in the petitions affect Plaintiffs' ability to satisfy the *Abbott Laboratories* factors governing ripeness in the context of pre-enforcement challenges. *See infra* at pp. 4-6.

enjoined, the Stark County Board of Elections could be forced to place those requests on the ballot as early as the March 2020 election, after which the Ohio State Board of Education ("State Board") will be forced to approve both transfers under the unconstitutional Fast-Track Transfer Statute.[3] As the State Board already determined once, the transfer sought in the 2019 Hills & Dales Request will harm Plain Local Schools' students, increase racial and socioeconomic isolation, and devastate Plain Local Schools' ability to provide adequate educational opportunities to its students.

Further, the transfers proposed in the 2019 Hills & Dales Request and the Irondale Request will cause Plain Local Schools to lose approximately $635,000 in property revenue ***each year***, which will, in turn, force Plain Local Schools to, among other things, cut classrooms and lay off staff that cannot easily be re-hired and discontinue vital programs and services that cannot easily be reinstated. *See* ECF No. 18, FAC ¶¶ 103-105.

That Plaintiffs' injury is anything but remote or conjectural is perhaps best evidenced by Hills & Dales's urgency to accomplish the transfer proposed in the 2019 Hills & Dales Request at the earliest opportunity, presumably so that it is finalized before the next school year. Indeed, Hills & Dales has now gone so far as to file a mandamus action in the Ohio Supreme Court after this suit was filed. Thus, Hills & Dales claims, on the one hand in this action, that "there's a definite issue with regard to . . . ripeness" and the case is premature. *See* ECF No. 17, Transcript of the December 2, 2019 Telephonic Status Conference, at 15. Yet, on the other hand in the Ohio Supreme Court, Hills & Dales insists that the Fast-Track Transfer Statute is immediately enforceable and seeks compliance and action by Plain Local Schools in order to place its transfer request on the March 2020 ballot and to effectuate the transfer by the 2020-2021 school year.

---

[3] According to Hills & Dales, over 95% of Hills & Dales residents report that they will vote in favor of the transfer proposed in the 2019 Hills & Dales Request.

3

This Court should not permit Hills & Dales (or any other Defendant) to have it both ways.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE RIPE.

The "seminal case" on ripeness in the context of pre-enforcement challenges is *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967). *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997). In *Abbott,* the Supreme Court explained that the purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott*, 387 U.S. at 148. Thus, when deciding whether a dispute is ripe, courts must consider two factors: 1) "the fitness of the issues for judicial decision"; and 2) "the hardship to the parties of withholding court consideration." *Abbott*, 387 U.S. at 149. In this case, both factors favor Plaintiffs.

#### A. The Issues Raised in Plaintiffs' Complaint Are Fit for Judicial Resolution.

The first factor—whether the issues are fit for judicial resolution—is satisfied where, as here, the issues are purely legal and no extensive factual development is required.[4] *Magaw*, 132 F.3d at 290.

Plaintiffs seek injunctive relief on the basis that R.C. § 3311.242 violates its constitutional rights and the constitutional rights of its students. In order to adjudicate those claims—which allege violations of the Equal Protection Clause, the Due Process Clause, the

---

[4] To be clear, Plaintiffs do not waive, and expressly reserve, their right to conduct discovery. *See Planned Parenthood Gulf Coast, Inc. v. Kliebert,* 141 F.Supp.3d 604, 630 (M.D. La. 2015), *aff'd sub nom. Planned Parenthood of Gulf Coast, Inc. v. Gee*, 837 F.3d 477 (5th Cir. 2016), *opinion withdrawn and superseded,* 862 F.3d 445 (5th Cir. 2017), *and aff'd sub nom. Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445 (5th Cir. 2017) (rejecting defendant's argument that plaintiff's request for discovery "attest[ed] to the need for factual development that prove[d] ripeness' absence" because "the ripeness doctrine demands no more than a threatened injury to the plaintiff, not a complete evidentiary record," and "[d]efendant's logic would render any federal case unripe where discovery is requested, without any regard for the reason such discovery is needed.").

Three-Day Reading Rule of the Ohio Constitution, and the One-Subject Rule of the Ohio Constitution—this Court will be required only to interpret the United States and Ohio Constitutions and examine the legislative history of R.C. § 3311.242. Thus, by their nature, Plaintiffs' claims raise fully formed legal questions.

For example, the factual record is sufficiently developed for this Court to decide Plaintiffs' equal protection claim based on race discrimination, which depends on a determination of the impact and purpose of the Fast-Track Transfer Statute and the 2019 Hills & Dales Request. *See* FAC ¶¶ 118-125. No further factual development will be required in order to discern the racial impact that the 2019 Hills & Dales Request will have or to determine the intent behind the request. As explained in Plain Local Schools' Motion for Preliminary Injunction, ECF No. 10, the race discrimination claim requires consideration of "the historical background of the decision [that resulted in the enactment of the Fast-Track Transfer Statute], the sequence of events leading up to the decision, departures from normal procedure, departures in the substantive factors considered, and the legislative or administrative history." *Spurlock v. Fox*, No. 3:09-CV-00756, 2012 WL 1514886, at *3 (M.D. Tenn. Apr. 30, 2012) (citing *Arlington Heights*, 429 U.S. at 267-68); *see also* Motion for Preliminary Injunction, ECF No. 10, pp. 9-10.

Likewise, Plaintiffs' claim that the Fast-Track Transfer Statute violates the Equal Protection Clause by discriminating based on the arbitrary fact of district of residence only requires this Court to decide whether R.C. § 3311.242 is rationally related to a legitimate governmental interest. *Paterek v. Village of Armada*, 801 F.3d 630, 649-50 (6th Cir. 2015).

Plaintiffs' due process claim requires this Court to determine whether Ohio law grants Plain Local Schools' students an entitlement to an adequate and nondiscriminatory education, *Nozzi v. Hous. Auth. of City of L.A.*, 806 F.3d 1178, 1191 (quoting *Bd. of Regents of State Colls.*

*v. Roth*, 408 U.S. 564, 576–77 (1972)), and whether R.C. § 3311.242 deprives Plain Local Schools students of that entitlement without providing, at a minimum, "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted). Finally, Plaintiffs' claims under the Ohio Constitution only require this Court to examine the legislative history leading up to the adoption of the Fast-Track Transfer Statute.

Thus, the issues before the Court are legal in nature and no extensive factual development is necessary to determine the constitutionality of the Fast-Track Transfer Statute. *See, e.g., Magaw*, 132 F.3d at 290; *Susan B. Anthony List*, 573 U.S. at 167.

Moreover, even though Plaintiffs satisfy the "fit for judicial resolution" prong of the ripeness inquiry because their claims raise legal issues, the facts and circumstances here are such that ***there is*** a concrete factual situation before this Court. Plain Local Schools has already received two requests under the Fast-Track Transfer Statute. Where a proper request is presented, the provisions of the Fast-Track Transfer Statute are mandatory on every person and entity involved in effectuating a school district transfer requested and approved by the electors in the territory seeking to be transferred. Thus, Plain Local Schools' receipt of the Irondale Request and the 2019 Hills & Dales Request set in motion the enforcement of an unconstitutional school district transfer scheme.

Indeed, as a direct result of the enactment of the Fast-Track Transfer Statute, Hills & Dales is now seeking a peremptory writ of mandamus to force Plain Local Schools to facilitate its transfer to Jackson Schools for the 2020-2021 school year under R.C. § 3311.242. Regardless of the merits of that mandamus petition, or whether the 2019 Hills & Dales Request complies with the statutory requirements, the mere existence of the Fast-Track Transfer Statute has created

6

"the threat of enforcement" against Plain Local Schools, and exposed its students to unchecked school district transfers that, if effectuated, will result in Plain Local Schools becoming less racially diverse and being deprived of hundreds of thousands of dollars needed for vital student services.

The facts relevant to the impact that the transfers proposed in the 2019 Hills & Dales Request and the Irondale Request will have on Plain Local Schools are alleged in the FAC, ECF No. 18, and thus already before this Court.[5] Simply put, the dispute that this case presents is anything but abstract. *See Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Ass'n*, 656 F.3d 580, 587 (7th Cir. 2011) (quotation omitted) ("hardship need not take the form of an actual enforcement action; the threat of enforcement is sufficient because the law is in force the moment it becomes effective and a person made to live in the shadow of a law that she believes to be invalid should not be compelled to wait and see if a remedial action is coming.").

**B.     Plain Local Schools and its Students Will Suffer Undue Hardship if the Court Withholds Consideration of Plaintiffs' Claims.**

Regarding the second factor, hardship to the parties, "the U.S. Supreme Court has typically found hardship when enforcement of a statute or regulation is inevitable and the sole impediment to ripeness is simply a delay before the proceedings commence." *Kardules*, 95 F.3d at 1344 (citing *Blanchette*, 419 U.S. at 143, and *Buckley v. Valeo* 424 U.S. 1, 113-18 (1976)).

Here, the language of the Fast-Track Transfer Statute is mandatory; Plain Local Schools' receipt of the 2019 Hills & Dales Request and the Irondale Request under the statute unleashes a chain of events that, absent injunctive relief, will ultimately result in the transfers proposed in those requests. Thus, as Defendant Hills & Dales itself asserts in its separate mandamus petition before the Ohio Supreme Court, Hills & Dales submitted to Plain Local Schools a petition that it

---

[5] *See, e.g.,* FAC ¶¶ 90-117.

7

claims meets the requirements of R.C. § 3311.242, and the statute therefore "require[s]" Plain Local BOE to forward that petition to the Stark County Board of Elections. *See* Hills and Dales Mandamus Petition, attached as Exhibit A, ¶ 15; R.C. 3311.242(C).

The Fast-Track Transfer Statute then specifies that, if the 2019 Hills & Dales Request and the Irondale Request in fact meet the requirements of that statute, the Stark County Board of Elections "***shall certify*** the petition to the board of education." R.C. 3311.242(C) (emphasis added). At that point, Plain Local Schools "***shall promptly***" file the proposal with the State Board and certify the proposal to the Stark County board of elections "for the purposes of having the proposal placed on the ballot at the next general or primary election." R.C. 3311.242(B) (emphasis added). Assuming a majority of eligible voters approve the transfer—which is overwhelmingly likely given the history of Hills & Dales's attempts to transfer to Jackson Local Schools, and the number of signatures in the 2019 Hills & Dales Request—Plain Local Schools "***shall***" notify the state board of education, and the Jackson Township trustees "***shall*** enter into negotiations" with Jackson Local Schools over the terms of the transfer. R.C. 3311.242(E) (emphasis added). Although a formal agreement between Jackson Local Schools and the Jackson Township trustees is not mandatory, nothing in the Fast-Track Transfer Statute suggests that lack of a formal agreement between Jackson Local Schools and Jackson Township would prevent the transfer.[6]

The only remaining step after that is the State Board's mandatory approval of the agreed-upon transfer, *see* R.C. 3311.242(G) (the State Board "***shall approve***") (emphasis added), and Jackson Local Schools "***shall file***" an updated school district map, and funds must be divided

---

[6] *See* Ohio Legislative Service Commission, *Final Analysis – H.B. 166 of the 133rd General Assembly*, p. 162 (September 20, 2019), https://www.lsc.ohio.gov/documents/budget/133/Main Operating/FI/BillAnalysis/19-HB166-133.pdf (accessed December 5, 2019).

among the two school districts and the eligible township. R.C. 3311.242(H) (emphasis added). Thus, absent injunctive relief, once the chain of events described in the Fast-Track Transfer Statute is set in motion, Plaintiffs will have no opportunity to prevent the transfer.

Moreover, Hills & Dales has filed a mandamus petition in an effort to further expedite this process, seeking to ensure the transfer it seeks appears on the March 2020 ballot and is effectuated by the 2020-2021 school year. This case is thus entirely unlike those cases in which courts have found ripeness to be lacking because the harm is remote or speculative. *See, e.g.*, *Production Credit Ass'n of N. Ohio v. Farm Credit Admin.*, 856 F.2d 373, 375 (6th Cir. 1988) (finding plaintiff's challenge to a regulation unripe because there was nothing "to suggest that the impact of the regulations imposes any duty or burden of compliance…at this time" or even that the regulation would ever be applied to the plaintiff).

Indeed, the Sixth Circuit's decision with respect to ripeness in *Kardules v. City of Columbus* is directly on point. In *Kardules*, the plaintiffs challenged provisions in water and sewage contracts between the City of Columbus and the Village of New Albany, claiming that those provisions impaired their constitutional right to vote on a ballot issue pertaining to the proposed merger of two municipalities. *Kardules*, 95 F.3d at 1339. The challenged contract language provided that the City would impose a tenfold increase in the water and sewage fees paid by New Albany customers if the Village chose to merge with a nearby township. *Id.* The plaintiffs claimed that the financial disincentive to merger created by this contract language impaired their right to vote on the proposed merger, which was proposed to be placed on the November 1994 ballot. *Id.* at 1340. At the time suit was filed in February 1994, however, several steps remained before the issue could be placed on the ballot – including agreeing upon and submitting conditions of the merger to the board of elections. *Id.* at 1343.

The Sixth Circuit rejected the City's contention that the issue was not ripe for review until the merger was complete. *Id.* at 1344. It was the "threat of economic hardship," which would skew the election results, that mattered for purposes of the plaintiffs' claims, and that threat already existed at the time the suit was filed. *Id.* Similarly, here, the adoption of the Fast-Track Statute wreaks immediate injury on Plain Local Schools and its students, who risk losing both racial diversity and substantial financial resources for vital programming without due process and for discriminatory and irrational reasons, in violation of the Equal Protection and Due Process Clauses of the Constitution.

Indeed, the Sixth Circuit in *Kardules* did not require plaintiffs to show with absolute certainty that the merger would have been put on the ballot; it was sufficient that "given the fact that the commission members, almost by definition, were all in favor of merger, it was highly probable that they would complete their task and file conditions of merger." *Id.* In fact, the court underscored that, "[g]iven [the] multi-step merger process, [the plaintiffs] arguably picked 'the most ripe' time to file their complaint by waiting until after the commission was formed but acting before the voters determined the fate of the merger proposal." *Id.* at 1346. Here, Plain Local Schools has chosen "the most ripe" time to file: after it received two "fast-track transfer" requests, presumably initiating the transfer process, but before any transfer has been completed, at which point the harm would be difficult, if not impossible, to undo.[7]

Even if the ultimate transfer of Hills & Dales to Jackson Local School District and Irondale to North Canton were not virtually inevitable to occur under the Fast-Track Transfer

---

[7] While the Sixth Circuit in *Kardules* ultimately determined that the plaintiffs had no standing because it was purely speculative whether the monetary concerns raised would actually affect their right to vote, *Kardules*, 95 F.3d at 1349, this case is readily distinguishable on that aspect. As explained in Part II.A, *infra*, the Fast-Track Transfer Statute has already injured Plain Local Schools and will inevitably result in school district transfers that will irreparably harm, and violate the civil and constitutional rights, of Plain Local Schools and its students.

Statute at some point in time—which they are—the mere fact that the process of transfer has been initiated, and that Plain Local Schools faces imminent threat of being forced by the unconstitutional Fast-Track Transfer Statute to participate in that process, makes this case ripe for review. Plain Local Schools already faces to requests under the statute, and more may be on the way. "To require [Plain Local Schools] to proceed without knowing whether the [legislation] is valid would impose a palpable and considerable hardship." *Thomas*, 473 U.S. at 581 (quoting *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Dev't Comm'n*, 461 U.S. 190, 201-02 (1983) (internal quotation marks omitted)).

In fact, Hills & Dales itself alleges that Plain Local Schools has an immediate legal obligation to take affirmative steps to comply with the Fast-Track Transfer Statute and any requests it receives under it, and Plain Local Schools currently is defending a mandamus action as a result of the Fast-Track Transfer Statute. This, on its own, weighs in favor of considering Plain Local Schools' claims because "[t]he Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences." *See, e.g., Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (citing *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734 (1998)); *Blitch v. City of Slidell,* 260 F.Supp.3d 656, 663 (E.D. La. 2017) ("Absent a pre-enforcement challenge, plaintiffs will have to either (1) comply with a permitting ordinance that they allege violates the First Amendment, or (2) violate the ordinance and risk jail time and a fine, as well as having their right to obtain a permit stripped away for at least a year"); *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1220 (10th Cir. 2017) (Department of Interior regulations that imposed a "forced choice" on New Mexico caused a "cognizable injury" and had

a direct impact on New Mexico because the State had "been forced to choose one of two undesirable options: participate in an allegedly invalid process that eliminates a procedural safeguard promised by Congress, or eschew the process with the hope of invalidating it in the future, which risks the approval of gaming procedures in which the state had no input.").

Accordingly, Plaintiffs' claims are ripe because the transfer process has been initiated under the statute that Plaintiffs allege to be unconstitutional. If Plaintiffs are forced to wait until the transfer process is complete, it will be too late for meaningful relief.

## II. PLAINTIFFS HAVE STANDING.

The "irreducible constitutional minimum" requirements for standing are that the plaintiff must have 1) an injury in fact that is 2) "fairly traceable" to the defendants' conduct and that is 3) "likely to be redressed" by a favorable judgment. *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan,* 504 U.S. at 560). Although "tangible" injuries such as economic loss are considered concrete injuries, an injury does not have to be tangible in order to be concrete. *Id.* at 1549. Thus, the Supreme Court has recognized harm to constitutional interests, such as the right to free speech or the right to free exercise of religion, as concrete injuries sufficient to satisfy the first requirement of standing. *Id.* (citing *Pleasant Grove City v. Summum,* 555 U.S. 460 (2009), and *Church of Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520 (1993)).

In deciding whether Plaintiffs' have Article III standing, this Court must accept the allegations in the Verified Complaint as true and construe the Complaint in Plaintiffs' favor. *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988); *Kardules* 95 F.3d at 1346; *see also Lujan*, 504 U.S. 561 ("At the pleading stage, general factual allegations of injury resulting from the

defendant's conduct may suffice….").

### A. Plain Local Schools' Students Suffer Imminent, Concrete, and Particularized Injury-in-Fact.

As alleged in the Verified Complaint, Plain Local Schools and its students faces a near-certainty of severe economic harm, as well as increased racial isolation in its schools. *See, e.g.,* FAC ¶¶ 90-117. Plain Local Schools and its students, moreover, have already suffered injury to their procedural due process rights and equal protection rights, which were effectuated by the passage of the Fast-Track Transfer Statute.[8] By virtue of the statute's unique and arbitrary transfer procedure, which applies and became imminent when the two transfer petitions at issue in the case were filed, Plain Local Schools' students suffer the harm of unequal treatment and of loss of those procedural safeguards protecting their right to an adequate and nondiscriminatory education. What is more, the statute forces Plain Local Schools, absent injunctive relief, to take concrete steps to carry out the transfer that it contends is unconstitutional under both the U.S. and Ohio Constitutions.

With respect to the equal protection injury, unequivocal Sixth Circuit and Supreme Court precedent dictate that the denial of equal treatment under a discriminatory statute or state action is itself constitutionally cognizable injury sufficient to confer standing. "[W]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, the injury in fact at issue is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Sullivan v.*

---

[8] While no Defendant raised the issue of whether Plain Local Schools has standing to assert claims on behalf of all of its students and the Order specifically indicates that the Court would benefit from briefing "as to the ripeness of this case," Plain Local Schools unquestionably has third-party standing to assert the claims in the FAC to protect the rights of its students. *Akron Bd. of Ed. v. State Bd. of Ed. of Ohio*, 490 F.2d 1285, 1289 (6th Cir. 1974); *Cincinnati City Sch. Dist. v. State Bd. of Educ.*, 680 N.E.2d 1061, 1067-68 (Ohio 10th Dist. 1996); *cf. Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925) (considering claims by a private school asserting the substantive due process rights of parents and students who attended the school).

13

*Benningfield*, 920 F.3d 401, 408 (6th Cir. 2019) (citing *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)). Plaintiffs' injury is imminent and ongoing, since the Fast-Track Transfer Statute on its face arbitrarily treats students differently based on their school district of residence, and the pending 2019 Hills & Dales Request and the Irondale Request demonstrate that Plain Local Schools' students are particularly and immediately harmed by that differential treatment. Additionally, as alleged in the Verified Complaint, the Hills & Dales Request was motivated by discriminatory intent and will inevitably have a racially discriminatory impact on all of Plain Local Schools' students.

Similarly, with respect to the procedural due process claim, the injury to Plain Local Schools and its students occurred when the Fast-Track Transfer Statute went into effect. At that moment, a different, arbitrary set of procedures became applicable to Plaintiffs. Thus, the procedural due process injury also occurred at that time. In *Seguin v. City of Sterling Heights*, 968 F.2d 584 (6th Cir. 1992), a case involving a due process challenge to a zoning ordinance that negatively affected the plaintiffs' property, the court held that "the plaintiffs' injury occurred when the City Council passed the zoning ordinance. It was at that time that the plaintiffs were first subjected to procedures which they claimed violated the Due Process Clause…. [T]his is the type of injury that is instantly cognizable in federal court…." *Id.* at 589; *cf. Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 461 (6th Cir. 2016) ("In procedural-due-process claims…, a plaintiff's injury accrues at the time that process was denied because 'the allegedly infirm process is an injury in itself.'") (quoting *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991)).

In addition, "[b]ecause the plaintiffs [were] making a facial challenge to the statutes themselves, any procedural infirmity would not be cured by the subsequent application of the

statute"; there was therefore no reason to wait before adjudicating the plaintiffs' claims. *Seguin*, 968 F.2d at 589. Likewise, in *Wright v. O'Day*, 706 F.3d 769 (6th Cir. 2013), the court rejected the notion that the plaintiff—a thirteen-year-old boy who had been placed on a child-abuser registry without a hearing—claimed an injury "anchored in future events and the possibility of future harm" because he claimed injury from the likely impact on his future job prospects, *id.* at 771. The court noted that "a litigant can suffer an injury-in-fact from the denial of procedural protections even if, when applied, the procedures might not result in relief," *id.* at 771-72, and explained that the denial of process itself was sufficiently concrete and imminent to support standing, *id.* at 772.

Finally, the Fast-Track Transfer Statute imposes other concrete and imminent harms on Plain Local Schools and its students. As noted above, now that they have been initiated, the 2019 Hills & Dales Request and the Irondale Request are all but certain to result in the transfer of those students to Jackson Local Schools and North Canton Schools, respectively, absent injunctive relief. Plain Local Schools will therefore lose hundreds of thousands of dollars, and its students will lose access to vital services and programs. FAC ¶¶ 84-106; *Cf. Pennell*, 485 U.S. 1, 8 (1985) (holding that landlords had standing to challenge ordinance requiring consideration of the "hardship to a tenant" who objected to a rent increase even though landlords did not allege having "tenants who might trigger" the ordinance's requirement because "the likelihood of enforcement . . . with the concomitant probability that a rent will be reduced . . . is a sufficient threat of actual injury to satisfy Art. III's" standing requirement.).

Further still, the mere fact that, as Hills & Dales alleges in its Mandamus Petition, Plain Local Schools would be required to take affirmative steps to comply with the Fast-Track Transfer Statute and any requests it receives under it constitutes injury. *See supra* at pp. 9-10; *see*

15

*also U.S. v. Storer Broadcasting Co.*, 361 U.S. 192, 200 (1956) (holding that the plaintiff had standing to challenge agency rules simply because the rules had gone into effect and "now operate to control the business affairs of" the complainant, who consequently "cannot cogently plan its present or future operations" without knowing whether the rules were valid).

Although it is conceivable (however unlikely) that no qualified electors would have sought to take advantage of the Fast-Track Transfer Statute once it passed, that is not the case now. To the contrary, Plain Local Schools received two transfer petitions within 20 days of the Fast-Track Transfer Statute's effective date. As such, the harm alleged here is "certainly impending." *Clapper v. Amnesty Int'l*, 568 U.S. 398 (2013).

### B. Plaintiffs' Injuries are Directly Traceable to the Defendants' Conduct and Will Be Redressed by a Favorable Decision in this Case.

A plaintiff only needs to show that the asserted injuries are "***fairly*** traceable" to the defendants' conduct and "***likely*** to be redressed" by a favorable judgment. *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. at 560) (emphasis added). Plain Local Schools can easily demonstrate that both of these requirements are met in this case. The injury to Plain Local Schools' and its students' constitutional rights, as well as to the school district's racial diversity and economic security, are directly caused by Defendants' actions in adopting and executing the Fast-Track Transfer Statute, and by the requests that Plain Local Schools has received pursuant to it. As noted above, absent relief those requests set in motion an inexorable chain of events that will inevitably, at some point in time, result in the transfer of Hills & Dales from Plain Local Schools to Jackson Local Schools, and in the Irondale properties to North Canton Schools.

Furthermore, a decision by this Court enjoining the Fast-Track Transfer Statute would completely redress Plaintiffs' injuries. If the Fast-Track Transfer Statute is enjoined, the Pre-

Existing Safeguards will apply, which would prevent the transfer of Hills & Dales to Jackson Local Schools, as well as any other arbitrary transfers initiated under the statute. Indeed, as explained in Plain Local Schools' brief in support of its Motion for Preliminary Injunction, ECF No. 10, the Pre-Existing Safeguards already prevented a transfer of Hills & Dales to Jackson Schools. *See* FAC ¶¶ 36, 84, 108. Under the Pre-Existing Safeguards, the State Board would be expressly precluded from considering Hills & Dales's second bite at the apple. *See* OAC § 3301-89-01(E).[9]

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully submit that they have standing to challenge the Fast-Track Transfer Statute and bring this lawsuit, and their claims are currently ripe for judicial review. This Court should therefore exercise jurisdiction over this case and grant Plain Local Schools' Motion for Preliminary Injunction, ECF No. 10.

Respectfully submitted,

*/s/Amanda Martinsek*

---

[9] To the extent Defendants intend to rely on *Clapper v. Amnesty International*, 568 U.S. 398 (2013), this case is entirely distinguishable. In *Clapper*, the Court found traceability lacking and rejected the plaintiffs' challenge to the government's warrantless wiretapping program, because the plaintiffs' ***chose*** to take specific measures that could constitute injury-in-fact, but did so based on their general fear that they may someday be targeted for surveillance. Here, by contrast, Hills & Dales has specifically alleged that Plain Local Schools is legally obligated to take specific measures to comply with the Fast-Track Transfer Statute due to the existing (not hypothetical or speculative) 2019 Hills & Dales Request that Hills & Dales is actively seeking to enforce in the Ohio Supreme Court.

## CERTIFICATE OF SERVICE

I hereby certify that, on December 9, 2019, a copy of the foregoing was filed electronically and sent to all counsel of record by operation of the Court's CM/ECF System.

*/s/Amanda Martinsek*
One of the Attorneys for Plaintiffs