# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**PLAIN LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al.,**

        Plaintiffs,

    vs.

**MIKE DEWINE, et al.,**

        Defendants.

**CASE NO. 2:19-CV-05086**

**JUDGE MICHAEL WATSON**

---

## DEFENDANT VILLAGE OF HILLS AND DALES' BRIEF REGARDING THE ISSUES OF RIPENESS AND STANDING

---

Scott M. Zurakowski (0069040), and
Owen J. Rarric (0075367), of
KRUGLIAK, WILKINS, GRIFFITHS
 & DOUGHERTY CO., L.P.A.
4775 Munson Street NW/PO Box 36963
Canton, Ohio 44735-6963
Phone: (330) 497-0700/Fax: (330) 497-4020
szurakowski@kwgd.com; orarric@kwgd.com

*Counsel for Defendant, Village of Hills and Dales*

## I.    **INTRODUCTION**

Nothing has changed since the last time the Plain Local Board of Education filed its first lawsuit with this Court. The claims asserted against Defendant, Village of Hills and Dales ("Hills and Dales") by Plaintiffs, Plain Local Board of Education ("Plain Local BOE") and the newly added students from Plain Local School District (collectively referred to as "Plaintiffs"), are premature and improper. Plaintiffs have filed claims against Hills and Dales as a result of individuals residing in Hills and Dales exercising their rights pursuant to R.C. 3311.242, by requesting to transfer territory from Plain Local School District to the Jackson Local School District. Plaintiffs have filed claims against Hills and Dales for residents choosing to exercise their rights pursuant to R.C. 3311.242, while Plain Local BOE refuses to follow the very same law. The private residents of Hills and Dales are simply trying to use this lawful statute to direct the education of their children.

Plaintiffs allege damages and harm that have not come to fruition and are entirely hypothetical. As a result, the claims asserted by Plaintiffs are not ripe and Plaintiffs likewise lack standing before this Court.

## II.    **FACTUAL BACKGROUND**

### A.    **R.C. 3311.242 became effective on October 17, 2019.**

R.C. 3311.242, titled, "[P]roposal to transfer territory; process," became effective on October 17, 2019, and contains a process by which qualified electors of a township containing the territory of two more school districts can place a transfer proposal of the territory to an adjoining school district on an election ballot for approval or disapproval by voters (the "Transfer Statute"). Here, only the first step is complete: individuals residing in Hills and Dales have sent their petition to transfer Hills and Dales to Plain Local BOE. While Plaintiffs continue to compare the Transfer Statute to R.C. 3311.24, the two statutes are separate and distinct. In

fact, the Ohio Secretary of State issued Advisory 2019-06, which expressly states, "The [Transfer Statute] creates a new process for transferring territory between school districts *in addition to* the other processes prescribed under continuing law." (Emphasis added.) [*See* Advisory 2019-06, attached hereto and incorporated herein as Exhibit A.] Here, Hills and Dales' petition is in accordance with the Transfer Statute.

B.     **Under the Transfer Statute, Hills and Dales filed a petition with Plain Local BOE on October 29, 2019, seeking to have it placed on the March 17, 2020 elections ballot.**

Students residing within Hills and Dales are currently considered to be part of the Plain Local School District. On October 29, 2019, Hills and Dales submitted a petition to Plain Local BOE, for the transfer of Hills and Dales from Plain Local School District to Jackson Local School District (the "Petition"). [*See* Petition, attached hereto and incorporated herein as Exhibit B.] The Petition specifically seeks the following:

> "We, the undersigned, qualified electors of the Village of Hills and Dales,
> Ohio, respectfully request to the electors of such city, village or township
> for their approval or rejection at the primary election to be held on the 17th
> day of March, 2020, that the territory bound by the geographic limits of
> Hills and Dales Village be transferred from Plain LSD to Jackson LSD
> according to O.R.C. 3311.242 and the transfer be effective for the
> beginning of the 2020-2021 school year[.]" [*Id.*]

C.     **Plain Local BOE voted to "table" the Petition pending full and final determination, by the federal courts of the United States of America, of the constitutionality and legality of R.C. Section 3311.242.**

Upon receipt of the Petition, Plain Local BOE was required to forward the Petition to the Stark County Board of Elections for the board to verify the sufficiency of the signatures. [R.C. 3311.242(C)]. After being in possession of the Petition for over three weeks without following

the mandatory steps under the Transfer Statute, Plain Local BOE held its November board meeting on November 20, 2019. At the board meeting, Plain Local BOE adopted a resolution explicitly stating it tabled the Petition, the petition of another movant, and any future petitions (the "Resolution"). [*See* Resolution, attached hereto and incorporated herein as Exhibit C.] Plain Local BOE's Resolution explicitly acknowledges the following:

- The Transfer Statute was passed by the Ohio General Assembly and signed into law by Governor Mike DeWine;

- Plain Local BOE received the Petition on October 29, 2019; and

- The Transfer Statute commands mandatory performance by Plain Local BOE in facilitating the transfer of Hills and Dales from Plain Local School District.

    *Id.*

Despite Plain Local BOE's acknowledgment of the Transfer Statute's mandatory requirements, Plain Local BOE refuses to abide by the law. Instead, it adopted the Resolution that expressly states Plain Local BOE "table[d] the Hills and Dales Petition * * * pending full and final determination, by the federal courts of the United States of America, of the constitutionality and legality of R.C. Section 3311.242[.]" *Id.* Further, Plain Local BOE is aware that the Petition explicitly requests the Petition be placed on the March 17, 2020 election ballot, as the Petition seeks a transfer effective at the beginning of the 2020-2021 school year. [Exh. B]

D. **Hills and Dales files Writs of Mandamus with the Supreme Court of Ohio.**

On December 3, 2019, Hills and Dales filed an original action with the Supreme Court of Ohio seeking a writ of mandamus to compel Plain Local BOE to submit the Petition to the Stark County Board of Elections for verification of the signatures on the Petition. Thereafter, on December 13, 2019, the Supreme Court of Ohio dismissed Hills and Dales' original action

finding that Hills and Dales did not have standing. On December 16, 2019, numerous qualified electors who reside in Hills and Dales filed an original action with the Supreme Court of Ohio seeking a writ of mandamus to compel Plain Local BOE to submit the Petition to the Stark County Board of Elections for verification of the signatures on the Petition. The Supreme Court of Ohio has not yet ruled on the most recently filed original action. There is no other development of the factual record to date.

III.     **ARGUMENT**

A.      ***PLAINTIFFS' AMENDED CLAIMS ARE NOT RIPE FOR ADJUDICATION.***

Ripeness is a justiciability doctrine designed to "prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *American Broadcasting Co., Inc. v. Blackwell*, 479 Supp.2d 719, 730 (S.D.Ohio 2006), citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985). "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Id.*, citing *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 294 (1997). It is the plaintiff's burden to prove that its claim is ripe. *B&N Coal, Inc. v. Blue Racer Midstream, LLC*, S.D.Ohio No. 2:16-cv-980, 2019 WL 5079982 (Oct. 10, 2019), citing *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1064 (10th Cir.2012).

In performing the ripeness inquiry, the Court must weigh three factors when deciding whether to address the issues presented for review: (1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage of the proceedings. *Id.*, citing *Adult Video Ass'n v. United States Dep't of Justice*, 71 F.3d 568, 568 (6th Cir.1995). If the district court does not

have before it a ripe issue, the court must dismiss the claim as the court lacks subject matter jurisdiction. *Associated General Contractors of America v. City of Columbus*, 147 F.Supp.2d 864, 870 (S.D.Ohio 2001), citing *Bigelow v. Michigan Dep't of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992).

1. ***Plaintiffs' alleged harm is hypothetical and entirely contingent upon uncertain future events, including but not limited to, a vote and subsequent required agreement, neither of which may occur or have occurred.***

Plaintiffs' claims are not ripe because Plaintiffs' alleged harm is contingent upon uncertain future events that may not come to fruition.

Specifically, R.C. 3311.242(D) requires the proposed transfer to be placed on the ballot in a general or primary election. If, and only if, the proposal is approved by a majority of the voters casting ballots, does the proposed transfer continue along the process outlined in the Transfer Statute. If the proposal does not receive majority approval, that is the end of the proposal and no transfer takes place. While Plaintiffs allege that it is a certainty these proposals will pass, the results of an election are anything but certain.

Next, R.C. 3311.242(F) states another point where the proposal may fail. Under R.C. 3311.242(F), the board of trustees of Jackson Township and the Jackson Township Board of Education enter into negotiations regarding the proposed transfer. The receiving board of education, however, is not required to enter into a formal agreement. The proposal only goes forward if the board of trustees of Jackson Township and the Jackson Township Board of Education enter into a formal agreement. Plaintiffs fail to raise this point, but its reality is far from a guarantee.

In addition, the test of R.C. 3311.242(G) requires the State Board of Education to approve any proposal submitted under division (F) before the transfer is executed. But, a

proposal will only be submitted under division (F) "if the board of trustees and the [receiving board of education] enter into a formal agreement." In other words, when the board of trustees and the receiving board of education do not enter into a formal agreement, the proposal is never passed along to the State Board of Education for approval, ending the process.

Courts normally find constitutional challenges to referendums premature and therefore unripe when they are brought prior to the election. *See, e.g. Nevada Rest. Ass'n v. Pest Comm.*, 2008 WL 8225546, at *4 (D. Nev. 2008); *Filo Foods LLC v. City of SeaTac*, 2013 WL 6095551, at *3 (W.D. Wash. 2013); *State ex rel. Cramer v. Brown*, 454 N.E.2d 1321, 1322 (Ohio 1983) ("It is well-settled that this court will consider, in an action to strike an issue from the ballot, a claim that the proposed amendment would be unconstitutional if approved, such claim being premature."). The Sixth Circuit Court of Appeals has held that the proper procedure when the constitutionality of a referendum is challenged is to "allow[] the election to proceed and rule[] on the validity of the measure after its passage." *Ranjel v. City of Lansing*, 417 F.2d 321,325 (6th Cir. 1969).

In *Ranjel*, the Court overturned a lower court's decision enjoining a referendum on spot-zoning from being placed on the ballot. The lower court held the referendum would violate the Thirteenth and Fourteenth Amendment rights of the plaintiffs. *Id.* at 322. However, the Court determined that the claims, because they had been brought prior to the election, had not been brought at the proper time. For this reason, the Court reversed the lower court's decision and remanded the case with instructions to dismiss the complaint. *Id.* at 325.

In *KCCP Trust v. City of North Kansas City*, 432 F.3d 897 (8th Cir. 2005), another scenario analogous to this matter, the court analyzed the alleged harm prong of the ripeness test. In *KCCP Trust*, the plaintiff, Time Warner Cable, sued to enjoin the City of North Kansas City,

Missouri from building a fiber-optic network. *Id.* at 897-898. The district court dismissed the plaintiff's complaint without prejudice because the plaintiff's claims were not ripe. *Id.* at 898. The Eighth Circuit Court of Appeals affirmed the district court's dismissal. *Id.*

In *KCCP Trust*, the city's planned network would provide data, voice, and video to customers in the city. *Id.* However, as initially planned and constructed, the network would not provide cable television services. *Id.* In response to the planned network, the plaintiff wrote a letter to the city stating it believed the network would violate a state law that no municipality could own or operate cable television facilities and services unless approved by a vote of the people. *Id.* The city advised the plaintiff it hadn't decided whether to offer cable television services over the network and if it did, the city acknowledged a public vote would be required. *Id.*

In finding that the plaintiff's claims were not ripe, the court ruled that if the city were to upgrade the network without a public vote, the plaintiff could seek a preliminary injunction to stop such action at that time. *Id.* at 900. The court ruled that Article III limits the federal courts to deciding "Cases" and "Controversies" and prohibited it from issuing an advisory opinion. *Id.* at 899, citing *Pub. Water Supply Dist. No. 8 v. City of Kearney*, 401 F.3d 930, 932 (8th Cir. 2005). *See also Friends of Marolt Park v. U.S. Dept. of Transp.*, 382 F.3d 1088 (10th Cir. 2004) (The plaintiff's claims were not ripe because voters may or may not have passed different proposals for light rail or highway funding, and as a result, the court found any impact on the plaintiff rested upon contingent future events that may not occur as anticipated, or indeed that many not occur at all.).

Unlike standing, in determining ripeness, the court's focus should be on the development of the facts and not on the parties themselves. *Associated General Contractors of America v. City*

*of Columbus*, 147 F.Supp.2d 864, 870 (S.D.Ohio 2001). *See also Robinson v. General Motors Corp.*, 490 F.Supp.2d 869 (S.D. Ohio 2006) ("there are situations where, even though an allegedly injurious event is certain to occur, the Court may delay resolution of constitutional question until a time closer to the actual occurrence of the disputed event, when a better factual record might be available"), citing to *Regional Rail Reorganization Act Cases*, 419 U.S. 102 (1974).

The only step that has been completed under the Transfer Statute is the first step, which was complete once Hills and Dales delivered its Petition to Plain Local BOE on October 29, 2019. Since then, nothing has happened and it is unknown whether the Petition will become a proposal on the ballot as numerous questions remain outstanding.

> 2. **If Plaintiffs' relief is denied at this stage, Plaintiffs will not suffer hardship as the matter is premature for adjudication.**

If the Court denies review of Plaintiffs' claims at this time, Plaintiff will suffer minimal, if any hardship. *Friends of Marolt Park v. U.S. Dept. of Transp.*, 382 F.3d 1088 (10th Cir. 2004), citing *Ohio Foresty Ass'n Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998) (In ruling the plaintiff would not suffer hardship under the third prong of the ripeness test, the court found nothing would have prevented the plaintiff from attacking an agency's decision once voters had acted and once no further obstacles to construction of a highway would remain.).

In *Production Credit Ass'n of Northern Ohio v. Farm Credit Admin.*, 846 F.2d 373 (6th Cir. 1988), the court conducted an analysis of the third factor. In *Production Credit*, the plaintiff challenged the validity of a regulation approved by the Federal Farm Credit Board. *Id.* at 374. The plaintiff alleged the regulation was contrary to law because it granted the Farm Credit Administration the power to "regulate" the transfer of funds in 12 U.S.C. § 2252(a)(11). *Id.*

In upholding the district court's dismissal on the grounds of ripeness, the Sixth Circuit

Court of Appeals found the plaintiff did not and could not allege it was directed to transfer any funds pursuant to the challenged regulation. *Id.* at 375. The court ruled that plaintiff would not suffer any hardship if the court did not act immediately because the challenge to the regulation was not ripe for judicial review. *Id.* Importantly, the court noted that should the Farm Credit Administration ever attempt to direct the plaintiff to transfer assets, such transfers could be quickly enjoined, thereby ensuring that plaintiff's rights are protected until the validity of the regulation was determined. *Id.* Finally, the court expressed no opinion on the merits of the plaintiff's challenges to the validity of the regulation. *Id.*

Plain Local BOE heavily relies on *Kardules v. City of Columbus*, 95 F.3d 1335 (6th Cir. 1996) for the proposition that it will suffer undue hardship if this Court withholds consideration of its claims. (merit brief, pg. 9-10). Plain Local BOE fails to bring to this Court's attention numerous facts in *Kardules* that make it distinguishable to this matter.

In *Kardules*, the plaintiffs were two citizens who claimed their right to vote on a ballot issue concerning the proposed merger of the Village of New Albany and Plain Township was impaired by provisions in water and sewage contracts between the city of Columbus and the Village of New Albany. *Id.* at 1339. The defendants were the city of Columbus and two Columbus officials who were involved in the preparation of the contracts. *Id.*

Under Ohio law, the merger of two communities is a multi-step process in which the first step is to file a petition with the board of elections containing the names of five individuals from each community willing to serve on a merger commission. *Id.* at 1340. If a proper petition is submitted to the board of elections, the board must place the question of forming a merger commission on the ballot. *Id.* If a majority of voters in each community agree to the formation of a merger commission, the commission meets to form conditions of the merger to submit again to

the board of elections to be placed on the ballot of the next general election. *Id.*

Unlike this matter, the plaintiffs filed their complaint over three months *after* the first vote was held. *Id.* The court ruled that the plaintiffs' claims could be found ripe only if they could show they could not have obtained injunctive relief had they waited to file their complaint. *Id.* at 1345-1346. Importantly, in deciding the question of whether plaintiffs could have obtained injunctive relief, the court expressly noted that these factual issues were not explored before the district court because the city did not assert lack of ripeness until after plaintiffs filed their appeal. *Id.* at fn. 3. Here, Plaintiffs have filed their Amended Complaint *before* the vote was held.

Additionally, unlike *Kardules*, which progressed from voters down to a select few people who were chosen specifically to complete the transfer, the reverse happens under the Transfer Statue. The process under the Transfer Statute begins with 10% of the qualified electors filing a petition and *then* expands to include all of the qualified electors when the proposal is placed on the ballot. Because of this, unlike *Kardules*, the outcome under the Transfer Statute is much less certain.

Here, Plaintiffs' alleged hardship is again hypothetical and illusory. Until the transfer occurs, the only potential harm Plain Local BOE will experience stems from Plain Local BOE's obligations under R.C. 3311.242. Under the Transfer Statute, Plain Local BOE's obligations are to file the proposal with the State Board of Education and certify it to the Stark County Board of Elections. [R.C. 3311.242(B)-(C)]. If the proposal passes, Plain Local BOE is obligated to notify the State Board of Education of its passage. [R.C. 3311.242(E)(1)]. These are very minimal hardships.

Any alleged financial impact has not been determined, and thus, any hardship cannot be determined. Plaintiffs' ongoing assertion that Plaintiffs will lose over $635,000 in tax revenue each year is unknown and unsupported as there is no factual record (as explained above).[1] Therefore, Plaintiffs cannot demonstrate a hardship at this time, the Amended Complaint is not ripe, and the within matter must be dismissed.

B.    *PLAINTIFFS LACK STANDING TO BRING THEIR CLAIMS.*

Plaintiffs also lack standing to bring their claims. The "standing" aspect of justiciability is present when there is: "(1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be addressed by a favorable decision." *Associated General Contractors of America v. City of Columbus*, 147 F.Supp.2d 864, 870 (S.D.Ohio 2001), citing *United Food & Commercial Workers Union Local 751 v. Brown Group*, 517 U.S. 544 (1996). Each of these elements must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. *White v. U.S.*, 601 F.3d 545, 551 (6th Cir. 2010), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

1.    ***Plaintiffs have not suffered an injury in fact, and as a result, the Court does not have jurisdiction over the claims in Plaintiffs' Amended Complaint.***

First, Plaintiffs must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Id.*, citing *Lujan*, 504 U.S. at 560. The first prong is the most important prong of the inquiry. *Goleta National Bank v. O'Donnell*, 239 F.Supp.2d 745, 753 (S.D.Ohio 2002). Here, because the process under the Transfer Statute has not occurred (including the election),

---

[1] It is important to note that the $635,000 alleged damage includes the tax revenue of Irondale Circle, which is not a party to this matter.

Plaintiffs' alleged injuries based on the passage of the Transfer Statute are entirely hypothetical. Plaintiffs' alleged injuries are therefore insufficient to establish standing.

Plaintiffs' alleged injuries resulting from the passage of the Transfer Statute are not an invasion of any legally protected interests of the Plaintiffs. First, Plaintiffs contend the passage of the Transfer Statute caused them to suffer an injury to their procedural due process rights because it created an alternative process, outside the requirements of the Transfer Statute, by which individuals could transfer territory from one district to another. However, this is not a cognizable Due Process injury.

The Ohio Legislature passed the Transfer Statute, applying it generally to any territory in all "eligible townships". [R.C. 3311.242(A)(1)]. Because the Transfer Statute does not apply solely to territory within Plain Local School District, Plaintiffs did not have any Due Process rights that were infringed by the passage of the Transfer Statute, even if they are ultimately affected by it. *See Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915). The Sixth Circuit Court of Appeals has ruled, "there is a preliminary inquiry [in procedural due-process cases]: Does the state action involve the kind of individualized determination that triggers due-process protections in the first place?" *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017). Here, the Transfer Statute does not single Plaintiffs out for any individualized determination, and Plaintiffs have not suffered any cognizable harm to their Due Process rights in its passage. *Compare Id.* at 347-348*, with Sequin v. City of Sterling Heights*, 968 F.2d 584, 586 (6th Cir. 1992).

For their second alleged harm from the passage of the Transfer Statute, Plaintiffs allege the passage of the Transfer Statute violated their equal protection rights to be free from intentional racial discrimination. Yet, Plaintiffs fails to allege any facts related to the passage of

the Transfer Statute that indicate the Ohio Legislature or Governor Mike DeWine were motivated to pass the Transfer Statute by an improper intent to discriminate based on race. Plaintiffs allege only that the application of the Transfer Statute to them in the specific situation created by the Petition will have a racial disproportionate effect.

Courts have been adamant that a racial disproportionate impact is insufficient to establish a violation of the Equal Protection Clause. *Washington v. Davis*, 426 U.S. 229, 239 (1976). Because Plaintiffs have not alleged any facts to indicate there was racial animus in the passage of the Transfer Statute, they cannot establish that they have suffered any harm under the Equal Protection Clause stemming from its passage.[2]

Plaintiffs' other alleged injuries involve the application of the Transfer Statute to them through the private actions of the individuals who filed the Petition with the Plain Local School District. Plaintiffs claim injuries both from the Petition and from the potential outcome of the Petition. But, Plaintiffs have not suffered any injury from the Petition because they likely do not have any protected property interests in the territory to be transferred. *See, e.g., Gorrell v. Bevans*, 66 Colo. 67, 69 (1919) ("The territory of the district is not its property, but merely within its 'jurisdiction,' if we may so use that word. The Legislature changes the boundaries of counties and other quasi municipal corporations at will, without violating anybody's constitutional rights, which it could not do if the land were property. There is, therefore, no

---

[2] In addition, to the extent that Plaintiffs challenge the distinction that the Transfer Statute draws between eligible and ineligible townships, such a distinction (1) does not impose any barrier on Plaintiffs since it creates an alternative process for territory transfers and (2) triggers rational basis review since it does not discriminate based on any protected classifications. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973). It is beyond doubt that the Transfer Statute is rationally related to a legitimate governmental interest. The Transfer Statute allows communities to choose for themselves which schools their children will attend. This promotes at least two compelling governmental interests. First, it promotes the fundamental right of parents to direct the education of their children by allowing them the ability to impact which school they will attend. *See Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925). Second, it promotes the important value of local control of education by empowering communities to choose for themselves, through the democratic process, which schools they will be associated with. *See Zelman v. Simmons-Harris*, 536 U.S. 639, 644 (2002).

question of due process of law concerning the transfer of the [district's] territory [to another district].").

To the extent Plaintiffs allege harms from the outcome of the Petition, these harms are conjectural and hypothetical. The outcome of the process is not guaranteed. In arguing they will be harmed by the proposals, Plaintiffs rely solely on one of four possible outcomes to defend their claims. Plaintiffs' alleged injuries are thus conjectural and hypothetical – they may or may not happen at all. Because of this, Plaintiffs lack standing to bring any claims based on the ultimate outcome of these proposals.

Ultimately, Plaintiffs have not alleged that they have "suffered an 'invasion of a legally protected interest' that is concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548. As a result, the Court does not have jurisdiction over the claims in Plaintiffs' Amended Complaint.

## IV.    **CONCLUSION**

Based upon the foregoing, Plaintiffs' Amended Complaint is entirely premature. Hills and Dales therefore requests Plaintiffs' Amended Complaint and request for injunctive relief be dismissed.

*/s/ Scott M. Zurakowski*
Scott M. Zurakowski (0069040), and
Owen J. Rarric (0075367), of
KRUGLIAK, WILKINS, GRIFFITHS
 & DOUGHERTY CO., L.P.A.
4775 Munson Street NW/PO Box 36963
Canton, Ohio  44735-6963
Phone:  (330) 497-0700/Fax:  (330) 497-4020
szurakowski@kwgd.com; orarric@kwgd.com

*Counsel for Defendant, Village of Hills and Dales*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of December, 2019, a copy of the foregoing *Relator's Merit Brief* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. A copy of the foregoing was also served via email upon the below:

Amanda Martinsek
William D. Edwards
Manju Gupta
Daniela Paez
ULMER & BERNE LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1448
Phone: (216) 583-7000/Fax: (216) 583-7001
amartinsek@ulmer.com; wdedwards@ulmer.com;
mgupta@ulmer.com dpaez@ulmer.com

Rex A. Littrell
Rachael Rodman
ULMER & BERNE LLP
65 East State Street, Suite 1100
Columbus, Ohio 43215-4213
Phone: (614) 229-0000/Fax: (614) 229-0001
rlittell@ulmer.com; rrodman@ulmer.com

*Counsel for Plaintiffs*

*/s/ Scott M. Zurakowski*
Scott M. Zurakowski (0069040), and
Owen J. Rarric (0075367), of
KRUGLIAK, WILKINS, GRIFFITHS
 & DOUGHERTY CO., L.P.A.

*Counsel for Defendant, Village of Hills and Dales*

# EXHIBIT A



**ADVISORY 2019-06**
August 7, 2019

To:    All County Board of Elections
       Directors, Deputy Directors, and Board Members

Re:    Am. Sub. H.B. 166, State Operating Budget (133rd General Assembly)

## BACKGROUND

The Ohio General Assembly passed the new State Operating Budget, Amended Substitute House Bill 166, on July 17, 2019. Governor Mike DeWine signed the bill into law on July 18, 2019. This Advisory alerts boards of elections to changes in the administration of elections resulting from the passage of this legislation.

## SUMMARY

The act has several provisions that relate to different facets of elections. The provisions of the budget that appropriate funding went into immediate effect.[1] Other provisions, unless otherwise specified in the act, take effect on October 17, 2019.[2]

*Moves the Date of the 2020 Primary Election from March 10, 2020 to March 17, 2020*

Moves the day for holding a primary election, in a year when a presidential primary election is held, from the second Tuesday after the first Monday in March to the third Tuesday after the first Monday in March (March 17, 2020).

*Petitions dated March 10, 2020 for the 2020 Primary are acceptable*

Aligning with the new primary date, prohibits a declaration of candidacy, nominating petition, or other petition filed with the Secretary of State or a Board of Elections for the 2020 Primary or Special Election from being declared invalid because it identifies the date of the 2020 primary election as March 10, 2020. Therefore, candidates who have already pulled petitions and circulated them with the March 10 date do not need to circulate new petitions or alter the existing forms.

*Delayed certification for Presidential and Vice-Presidential candidates*

Delays the deadline for major political parties to certify presidential and vice-presidential candidates to the Secretary of State for the 2020 general election by moving the deadline from 90 days (August 5) before the day of the general election to 60 days (September 4) beforehand.

---

[1] Art. 2 §1(d) of the Ohio Constitution.
[2] Art. 2 §(c) of the Ohio Constitution.

*Delayed certification of forms for the 2020 general*

Delays the deadline for the Secretary of State to certify the forms of the official ballots to be used at the 2020 general election from the 70th day (August 25) to the 50th day (September 14) before the 2020 general election.

*Pay Increase*

Increases by 1.75 percent annually, through 2028, the statutory $6,000 minimum amount paid to some members of boards of elections, providing the same annual raise given to other board of elections members and other local elected officials under current law.

*Fewer required poll workers for multi-precinct locations*

A long-sought Ohio Association of Elections Officials change reduces the minimum number of precinct election officials per precinct in a multi-precinct voting location in which electronic pollbooks are used from four to two. Any reduction in poll workers requires a super majority vote of at least three members of that county's board of elections.

*School district territory transfer*

- Permits electors residing in school district territory located within a township that is split between two or more school districts to petition for the transfer of territory to another adjacent school district.
- Requires the proposal to be placed on the ballot at the next general, primary, or special election within 90 days after the board of elections certifies that the petition is signed by at least 10 percent of electors within the territory proposed to be transferred and voting in the last general election.

*Ohio political party fund is eliminated*

Repeals (and dissolves by January 1, 2020) the Ohio Political Party Fund, where income tax filers could credit $1, or $2 for married couples filing joint returns, of their income tax liability to the fund.

## EXPLANATION

*Date of 2020 Presidential Primary*

The act moves the date of a presidential primary election from the second Tuesday after the first Monday in March to the third Tuesday after the first Monday in March. This effectively moves the 2020 primary to March 17 from March 10. Under continuing law, all other primary elections in Ohio that are not a presidential primary election are held on the first Tuesday after the first Monday in May.[3]

*Grandfathering petitions for the 2020 Primary*

In consultation with the Secretary of State's Office, the legislature enacted a petition grandfathering provision to avoid problems from the new presidential primary election date. This provision prohibits finding any of the following invalid because it identifies the date of the 2020 primary as March 10, 2020, instead of March 17, 2020:

---

[3] R.C. 3501.01, 3513.01, and 3513.12.

1. A declaration of candidacy;
2. A nominating petition; or
3. Another petition filed with the Secretary of State or a Board of Elections for the 2020 primary election or a special election on the day of that election.

*Delayed certification of Presidential and Vice-Presidential candidates and forms for 2020*

The act delays the deadline for major political parties to certify presidential and vice-presidential candidates to the Secretary of State for the 2020 general election. Like a few other provisions in the budget, this is a provision that applies only to 2020. For the 2020 general election, presidential and vice-presidential candidates must be certified to the Secretary no later than the 60th day (September 4) before the 2020 general election. Under continuing law, major political parties must certify the names of the presidential and vice-presidential candidates to the Secretary for placement on the ballot on or before the 90th day (August 5) before the day of the general election in future years.

Additionally, the act requires the Secretary to certify to the boards of elections the forms of the official ballots to be used for the 2020 general election on or before the 50th day (September 14) before the 2020 general election. This provision also applies only to the 2020 general election. Under continuing law, the Secretary must certify the forms of the official ballots to be used at a general election on the 70th day (August 25) before a general election in future years.[4]

*Pay Increase*

The act increases the minimum compensation of a member of a board of elections by 1.75 percent annually through 2028. Under continuing law, a board member's annual compensation must be the greater of the following:[5]

1. The sum of the following:

- $102.41 for each full 1,000 of the first 100,000 in county population;
- $48.79 for each full 1,000 of the second 100,000 in county population;
- $26.50 for each full 1,000 of the third 100,000 in county population;
- $8.13 for each full 1,000 above 300,000 in county population; or

2. $6,000.

Legislation enacted last year required the dollar amounts listed under (1) above to be increased by 1.75 percent annually from 2019 through 2028. However, it did not adjust the $6,000 minimum for counties with smaller populations.[6] This act adjusts that $6,000 minimum in the same way as the other figures, meaning that board members who qualify only for the minimum compensation also will receive the 1.75 percent annual increase.

*Fewer required poll workers for multi-precinct locations*

The act reduces the minimum number of precinct election officials who must be appointed, from four per precinct to two, in voting locations that serve more than one precinct and use electronic

---

[4] Section 735.11 of the Act.
[5] R.C. 3501.12.
[6] Substitute Senate Bill 296 (132nd General Assembly). For discussion, see pages 4-5 https://www.sos.state.oh.us/globalassets/elections/advisories/2019/adv2019-03.pdf.

pollbooks. Under the act, a board of elections that wishes to make that reduction must approve the change by a vote of at least three of its members, thereby requiring the vote to be bipartisan.

Additionally, the act makes a technical correction to change the term "presiding judge" to "voting location manager," which is the term used elsewhere in the Revised Code.

*School district territory transfer*

The act creates a new process for transferring territory between school districts in addition to the other processes prescribed under continuing law. Under the act, electors residing in a school district's territory that is located within a township within two or more school districts may petition for the transfer of territory to another adjacent school district. The board of education that is losing territory must file the proposal, including a map of the territory's boundaries, with the State Board of Education and certify the proposal to the county board of elections. The petition must be signed by at least 10 percent of electors residing within the territory that voted in the last general election.

Upon receiving a certified proposal, the board of elections must submit the proposal to electors within the territory to vote on in the next general or primary election, or in a special election specified in the certification. Any election must be at least 90 days after the date of the proposal's certification. The election must be held in the same manner as a regular board of education election and the proposal must be approved by a majority vote of qualified electors voting.

If a proposal is approved by the electors, the district board losing territory must notify the State Board of Education of the election results, and the board of trustees of the eligible township must enter negotiations with the district board gaining territory regarding terms of the transfer. The board of trustees and the district board gaining territory must enter into a formal agreement regarding the transfer's terms to execute the transfer, but the district board is not required to enter into any agreement. Upon entering into a formal agreement, the district board gaining territory must file the proposal and copy of the agreement with the State Board. The State Board must approve the filed proposal and provide written notification of that approval to both districts affected by the territory transfer. The act does not appear to give the State Board the discretion to reject the proposal.

The district board gaining territory, upon receiving notification of the State Board's approval, must file a map showing the boundaries of the territory being transferred with the county auditor. Additionally, both district boards affected by the territory transfer, as well as the township board of trustees, must execute an equitable distribution of funds and indebtedness between the districts. The transfer shall then be complete, and legal title of the school property in the territory shall be vested in the district board of the district gaining territory.[7]

*Ohio political party fund is eliminated*

The act eliminates the Ohio political party fund income tax checkoff for taxable years beginning after 2018. Under current law, an individual may choose an option on their return to credit $1, or $2 for married couples filing joint returns, of their income tax liability to the fund. Money in the fund is divided among Ohio's major political parties. The money cannot be used to further the election or defeat of any particular candidate or to influence the outcome of an issue election.

---

[7] R.C. 3311.242.

Under the act, the fund will be dissolved on January 1, 2020 or earlier if the Commissioner determines that all or substantially all of the checkoff contributions for taxable years beginning before the termination date have been received by the fund. Amounts received by the fund before its dissolution would be distributed and utilized in the same manner prescribed by current law.

The act relieves the Auditor of State of a current duty to conduct annual audits of the use of money distributed from the fund. The audit requirement is eliminated after the fund is dissolved and all money is distributed.[8]

If you have any questions concerning this Advisory, please contact the Secretary of State's elections counsel at (614) 728-8789.

Yours in service,

Frank LaRose
Ohio Secretary of State

---

[8] R.C. 3517.16, 5747.081, 3517.17, and 3517.18 (all repealed); R.C. 131.44, 3501.05, 3517.01, 3517.10, 3517.102, 3517.1012, 3517.11, 3517.12, 3517.153, 3517.23, 3517.99, 3517.992, 5703.05, 5747.03, and 5747.04 (con forming amendments); Sections 409.10 and 757.240 of the Act.

**EXHIBIT B**

Form No. 6-I Prescribed by Ohio Secretary of State (09-17)

# Initiative Petition
## Municipality or Home Rule Township
R.C. 504.14, 731.28–41, 3501.38, 3503.06

**MYRA M. BRYANT**
Notary Public, State of Ohio
My Commission Expires 01-31-2021

NOTE: Prior to circulation of an initiative petition proposing an ordinance or measure must be filed with the City Auditor, Village Clerk or Township [...] ordinance must be signed by ten percent of the number of electors in the city, village [...] incorporated area of the township) who voted for governor at the preceding gubernatorial election and must be filed with the City Auditor, Village Clerk or Township Fiscal Officer.

### (NOTE –The below notice must be printed in red.)

**NOTICE – Whoever knowingly signs this petition more than once, signs a name other than his own, or signs when not a legal voter is liable to prosecution.**

## To the Village Clerk of the Village of Hills and Dales, Stark County, Ohio:

We, the undersigned, qualified electors of the <u>Village</u> of <u>Hills and Dales, Ohio,</u> respectfully request to the electors of such city, village or township for their approval or rejection at the primary election to be held on the 17th day of March, 2020, that the territory bound by the geographic limits of Hills and Dales Village be transferred from Plain LSD to Jackson LSD according to O.R.C. 3311.242 and the transfer be effective for the beginning of the <u>2020-2021</u> school year:

The following is a full and correct copy of the title and text of **Sec. 3311.242.**:

(A) As used in this section:

(1) "Eligible township" means a township that contains the territory of two or more school districts.

(2) "Qualified electors" means electors residing within the territory proposed to be transferred.

(B) The board of education of a school district with territory in an eligible township shall promptly do both of the following regarding a proposal to transfer territory from the district to another school district to which the territory is adjoining if a petition that is certified under division (C) of this section requests such a transfer:

(1) File the proposal, together with a map showing the boundaries of the territory to be transferred, with the state board of education;

(2) Certify the proposal to the board of elections of the county in which the eligible township is located for the purposes of having the proposal placed on the ballot at the next general or primary election which occurs not less than ninety days after the date of the certification or at a special election, the date of which shall be specified in the certification, which date shall not be less than ninety days after the date of the certification.

(C) Upon receiving a petition of transfer signed by at least ten per cent of qualified electors voting at the last general election, the board of education shall cause the board of elections to check the sufficiency of signatures on the petition. If the board of elections determines the petition has been signed by at least ten per cent of qualified electors voting at the last general election, the board of elections shall certify the petition to the board of education for the purposes of division (B) of this section.

(D) Upon certification of a proposal under division (B)(2) of this section, the board of elections shall make the necessary arrangements for the submission of the question whether to approve the transfer to the qualified electors to vote thereon, and the election shall be conducted and canvassed and the results shall be certified in the same manner as in regular elections for the election of members of a district board of education.

(E) If the proposal submitted to qualified electors under division (D) of this section is approved by at least a majority of the electors voting on the proposal, both of the following shall apply:

(1) The board of education of the district from which the territory is being transferred shall notify the state board of education of the results of the vote.

(2) The board of trustees of the eligible township shall enter into negotiations with the board of education of the district to which the territory is being transferred regarding the terms of the proposal to transfer the territory.

(F) If the board of trustees of the eligible township and the board of education to which the territory is being transferred enter into a formal agreement based on negotiations under division (E)(2) of this section, the board of education shall file the proposal and a copy of the formal agreement with the state board. However, the district board of education shall not be required to enter into a formal agreement.

(G) The state board shall approve any proposal submitted under division (F) of this section and thereafter provide written notification of the approval to the board of education of the district from which the territory is being transferred and the board of education to which the territory is being transferred.

(H) Upon receipt of the written notification from the state board under division (G) of this section, the board of education of the district to which the territory is being transferred shall file a map showing the boundaries of the territory transferred with the county auditor of the county in which the eligible township is located. In addition, the two district boards and the township board of trustees shall execute an equitable division of the funds and indebtedness between the districts. Thereafter, the transfer shall be complete and the legal title of the school property in the territory transferred shall be vested in the board of education of the district to which the territory is transferred.

**Signatures on this petition must be from only one county and must be written in ink.**

| | Signature | Voting Residence, Street Number and Address | City, Village or Township | County | Date of Signing |
|---|---|---|---|---|---|
| 1. | Patrick | 2520 Fox Hill Dr NW Canton, OH 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 2. | | 2815 Brentwood Close St NW Canton OH 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 3. | Cynthia Ramaley | 2800 Brentwood close NW Canton, OH 44708 | Hills and Dales, OH | Stark | 10-21-2019 |
| 4. | Wm H Bulger | 2710 DUNKEITH N.W. CANTON, OHIO 44708 | Hills and Dales, OH | Stark | 10-21-2019 |
| 5. | Eleanor | 2629 DUNKEITH DR CANTON O 44708 | Hills and Dales, OH | Stark | 10.21.2019 |
| 6. | Marilyn A. Croxdale | 2624 Dunkeith Drive Canton, O 44708 | Hills and Dales, OH | Stark | 10-21-2019 |
| 7. | Gary M. Thomas | 2810 COVENTRY LN NW CANTON, 44708 | Hills and Dales, OH | Stark | 10-22-2019 |
| 8. | Judith S Sweeney | 2600 Glenmont Ave N.W. Canton 44708 | Hills and Dales, OH | Stark | 10/22/2019 |
| 9. | | | Hills and Dales, OH | Stark | |
| 10. | | | Hills and Dales, OH | Stark | |
| 11. | | | Hills and Dales, OH | Stark | |
| 12. | | | Hills and Dales, OH | Stark | |
| 13. | | | Hills and Dales, OH | Stark | |
| 14. | | | Hills and Dales, OH | Stark | |
| 15. | | | Hills and Dales, OH | Stark | |
| 16. | | | Hills and Dales, OH | Stark | |
| 17. | | | Hills and Dales, OH | Stark | |

## Circulator Statement
**Must be completed and signed by the circulator.**

I, DAvid N. GrAbowsky , declare under penalty of election falsification that I reside at the address
Printed Name of Circulator

appearing below my signature; that I am the circulator of the foregoing petition containing _8_ signatures;
Number

that I witnessed the affixing of every signature; that all signers were to the best of my knowledge and belief

qualified to sign; and that every signature is to the best of my knowledge and belief the signature of the person

whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code.

| WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE | David N. Grabowsky |
|---|---|
| | Signature of Circulator |
| | 2815 Brentwood Close St W.W. |
| | Permanent Residence Address |
| | Hills And Dales, VILLAGE CANTON OHIO  OH  44708 |
| | City or Village     State   Zip Code |

| Signature | Voting Residence, Street Number and Address | City, Village or Township | County | Date of Signing |
|---|---|---|---|---|
| 1. | 2445 Strathmore Drive NW 44708 (Canton ohio) | Hills and Dales, OH | Stark | 10/21/19 |
| 2. | 2615 BRENTWOOD RD CANTON, OH 44708 | Hills and Dales, OH | Stark | 10/21/19 |
| 3. Melody Crist | 2807 Brentwood Rd NW Canton OH 44708 | Hills and Dales, OH | Stark | 10/21/19 |
| 4. | 2801 BRENTWOOD RD NW CANTON, OH 44708 | Hills and Dales, OH | Stark | 10/21/19 |
| 5. V.S Kolaiky | 2450 DUNKEITH DR NW | Hills and Dales, OH | Stark | 10/21/19 |
| 6. Mindi Biella | 2400 Brentwood | Hills and Dales, OH | Stark | 10/21/19 |
| 7. Barb Cockroft | 2418 DUNKEITH DR NW CANTON, OH 44708 | Hills and Dales, OH | Stark | 10/31/19 |
| 8. Frederick McGray | 2720 Coventry LN NW | Hills and Dales, OH | Stark | 10/21/19 |
| 9. | 2810 Brentwood C Close NW Canton, OH 44708 | Hills and Dales, OH | Stark | 10/21/19 |
| 10. Wm P. M | 2615 BRENTWOOD CANTON, OH 44708 | Hills and Dales, OH | Stark | 10/21/19 |
| 11. Frank A Dhein | 2655 GLENMONT HTS. DR NW CANTON, OH 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 12. | 2515 LARCHMOOR PLWY CANTON, OH 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 13. Karen S Belden | 2710 Dunkeith NW Canton, O. 44708 | Hills and Dales, OH | Stark | 10/21/19 |
| 14. Jane A. Bishop | 2635 Glenmont Dr NW Canton, O 44708 | Hills and Dales, OH | Stark | 10/21/19 |
| 15. | 2350 Larchmoor Pkwy NW Canton, Ohio 44708 | Hills and Dales, OH | Stark | 10/21/19 |
| 16. | 2635 Glenmont Dr NW CANTON OH 44708 | Hills and Dales, OH | Stark | 10/21/19 |
| 17. Michele M. Dunn | 2520 Foxhill Dr. NW Canton OH 44708 | Hills and Dales, OH | Stark | 10/21/19 |

**Circulator Statement**

*Must be completed and signed by the circulator.*

I, Patrick M. Dunn [Printed Name of Circulator] declare under penalty of election falsification that I reside at the address appearing below my signature; that I am the circulator of the foregoing petition containing __17__ signatures; [Number] that I witnessed the affixing of every signature; that all signers were to the best of my knowledge and belief qualified to sign; and that every signature is to the best of my knowledge and belief the signature of the person whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code.

_____ 10/21/2019
Signature of Circulator

2520 Fox Hill Dr, NW
Permanent Residence Address

PMD 10/21/2019    Hills and Dales    OH    44708
City or Village    State    Zip Code

**WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE**

| | Signature | Voting Residence, Street Number and Address | City, Village or Township | County | Date of Signing |
|---|---|---|---|---|---|
| 1. | Mary E. Peppard | 5060 Hills and Dales Dr. N.W. | Hills and Dales, OH | Stark | 10/21/2019 |
| 2. | Sam Jones | 2405 Larchmoor PH Canton 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 3. | Karl M. Gray | 2720 Coventry Ln Canton OH, NW | Hills and Dales, OH | Stark | 10/21/2019 |
| 4. | Kimberly R. | 2515 Larchmoor Parkway Canton OH 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 5. | | 2030 Fox Hill NW CANTON, OH 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 6. | Robita a. | 2445 Strathmore Dr. Canton, OH 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 7. | Cynthi | 2758 Coventry Ln NW Canton, OH 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 8. | | 2858 Coventry Lane CANTON, OH 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 9. | Daniel Mahoney | 2815 Brentwood Circ St. N.W. Canton OH 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 10. | | 2550 Inverness Pkwy NW Canton OH 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 11. | | 2643 Brentwood Rd NW Canton Ohio 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 12. | | 2335 Larchmoor Pkwy NW Canton, Ohio 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 13. | | 2510 Dunkeith Dr NW CANTON, OH 44708 | Hills and Dales, OH | Stark | 10/21/2019 |
| 14. | Carole Samastano | 2436 Brentwood NW 44708 | Hills and Dales, OH | Stark | 10/21/19 |
| 15. | Richard Schwartz | 2550 Inverness Pkwy NW | Hills and Dales, OH | Stark | 10/21/19 |
| 16. | | 2463 Larchmoor Pkwy NW | Hills and Dales, OH | Stark | 10/21/19 |
| 17. | | 2600 Glenmont Rd NW | Hills and Dales, OH | Stark | 10/21/19 |

**Circulator Statement**

*Must be completed and signed by the circulator.*

I, Patrick M. Dunn [Printed Name of Circulator], declare under penalty of election falsification that I reside at the address appearing below my signature; that I am the circulator of the foregoing petition containing 17 signatures [Number]; that I witnessed the affixing of every signature, that all signers were to the best of my knowledge and belief qualified to sign; and that every signature is to the best of my knowledge and belief the signature of the person whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code.

**WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE**

Patrick M. Dunn 10/21/2019
Signature of Circulator

2520 Fox Hill Dr. NW
Permanent Residence Address

PMD 10/21/2019

Hills and Dales | OH | 44708
City or Village | State | Zip Code

| | Signature | Voting Residence, Street Number and Address | City, Village or Township | County | Date of Signing |
|---|---|---|---|---|---|
| 1. | Tim Baselly | 2400 Brentwood Rd NW Canton OH 44708 | Hills and Dales, OH | Stark | 10/21/19 |
| 2. | Ted Sarapano | 1476 Brentwood Canton OH 44708 | Hills and Dales, OH | Stark | 10/21/19 |
| 3. | | 2530 Innaeness Pky Canton, Ohio 44708 | Hills and Dales, OH | Stark | 10/21/19 |
| 4. | Prebhcharan Gill | 2143 Dunkeith DrNW CANTON OH 44708 | Hills and Dales, OH | Stark | 10-21-19 |
| 5. | Gurdeeh K Gill | 2143 Dunkeith Dr NW CANTON OH 44708 | Hills and Dales, OH | Stark | 10-21-19 |
| 6. | Marlene Z Tort | 2826 Coventry Ln NW CANTON, OH 44708 | Hills and Dales, OH | Stark | 10-21-19 |
| 7. | Merry Celeste Bates | 2640 Brentwood Rd NW Canton OH 44708 | Hills and Dales, OH | Stark | 10.21.19 |
| 8. | | 2440 Glenmont Rd NW Canton, OH 44708 | Hills and Dales, OH | Stark | 10.21.19 |
| 9. | Jennifer M. Salmartter | 2111 Dunkeith Dr NW Canton OH 44708 | Hills and Dales, OH | Stark | 10-21-19 |
| 10. | | 2111 DUNKEITH DR CANTON, OH 44708 | Hills and Dales, OH | Stark | 10-21-19 |
| 11. | | 2640 Brentwood Rd NW Canton Ohio 44708 | Hills and Dales, OH | Stark | 10.21.19 |
| 12. | David C. Ewing | 2545 Glenmont Rd NW CANTON, OH 44708 | Hills and Dales, OH | Stark | 10-21-19 |
| 13. | Joseph F. Toot | 2826 Coventry Ln N.W. CANTON, OHIO 44708 | Hills and Dales, OH | Stark | 10.21.18 |
| 14. | | | Hills and Dales, OH | Stark | |
| 15. | | | Hills and Dales, OH | Stark | |
| 16. | | | Hills and Dales, OH | Stark | |
| 17. | | | Hills and Dales, OH | Stark | |

## Circulator Statement
*Must be completed and signed by the circulator.*

I, [ Patrick M. Dunn ], declare under penalty of election falsification that I reside at the address
Printed Name of Circulator

appearing below my signature; that I am the circulator of the foregoing petition containing __13__ signatures;
Number

that I witnessed the affixing of every signature; that all signers were to the best of my knowledge and belief

qualified to sign; and that every signature is to the best of my knowledge and belief the signature of the person

whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code.

Patrick M. Dunn    10/21/2019
Signature of Circulator

2520 Fox Hill Dr. NW
Permanent Residence Address

| Hills and Dales | OH | 44708 |
|---|---|---|
| City or Village | State | Zip Code |

**WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE**

| | Signature | Voting Residence, Street Number and Address | City, Village or Township | County | Date of Signing |
|---|---|---|---|---|---|
| 1. | *Faye Nestor* | 2735 Brentwood NW | Hills and Dales, OH | Stark | 10/22/19 |
| 2. | *Penni S. Evens* | 2575 Glenmont Rd NW | Hills and Dales, OH | Stark | 10/22/19 |
| 3. | *Carl J. Ca* | 2800 Brentwood Rd NW | Hills and Dales, OH | Stark | 10/22/2019 |
| 4. | *Carol V.* | 2745 Dunkeith Dr | Hills and Dales, OH | Stark | 22 Oct 2019 |
| 5. | *Theresa Jusserumo* | 2205 Dunkeith Dr | Hills and Dales, OH | Stark | 22/Oct./2019 |
| 6. | *(signature)* | 2800 Brentwood Rd NW | Hills and Dales, OH | Stark | 10/22/2019 |
| 7. | *(signature)* | 2111 Dunkeith Dr NW | Hills and Dales, OH | Stark | 10/22/2019 |
| 8. | *(signature)* | 2520 Glenmont Rd NW | Hills and Dales, OH | Stark | 10/22/19 |
| 9. | *Mabel Ann Penny* | 2570 Glenmont Rd NW | Hills and Dales, OH | Stark | 10/22/19 |
| 10. | | | Hills and Dales, OH | Stark | |
| 11. | | | Hills and Dales, OH | Stark | |
| 12. | | | Hills and Dales, OH | Stark | |
| 13. | | | Hills and Dales, OH | Stark | |
| 14. | | | Hills and Dales, OH | Stark | |
| 15. | | | Hills and Dales, OH | Stark | |
| 16. | | | Hills and Dales, OH | Stark | |
| 17. | | | Hills and Dales, OH | Stark | |

## Circulator Statement
*Must be completed and signed by the circulator.*

I, **Patrick M. Dunn**, declare under penalty of election falsification that I reside at the address
<u>Printed Name of Circulator</u>

appearing below my signature; that I am the circulator of the foregoing petition containing **9** signatures;
Number

that I witnessed the affixing of every signature; that all signers were to the best of my knowledge and belief

qualified to sign; and that every signature is to the best of my knowledge and belief the signature of the person

whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code.

**WHOEVER COMMITS ELECTION
FALSIFICATION IS GUILTY OF A
FELONY OF THE FIFTH DEGREE**

*Patrick M. Dunn*
Signature of Circulator

2520 Fox Hill Dr. NW
Permanent Residence Address

| Hills and Dales | OH | 44708 |
|---|---|---|
| City or Village | State | Zip Code |

| | Signature | Voting Residence, Street Number and Address | City, Village or Township | County | Date of Signing |
|---|---|---|---|---|---|
| 1. | _Maurertheur_ | 27376 Glenmont Rd NW Canton OH 44708 | Hills and Dales, OH | Stark | 10/22/2019 |
| 2. | _Judy Harwich_ | 2737 Glenmont Rd NW Canton OH 44088 | Hills and Dales, OH | Stark | 10/22/2019 |
| 3. | _Joy Conyers_ | 2482 Glenmont Rd Canton OH-44708 | Hills and Dales, OH | Stark | 10/22/2019 |
| 4. | _Melinda Stuart_ | 2717 Coventry Lane NW Canton 44708 | Hills and Dales, OH | Stark | 10-22/2019 |
| 5. | _David Stewart_ | 2717 Coventry Ln NW CANTON, OH 44708 | Hills and Dales, OH | Stark | 10/22/19 |
| 6. | | | Hills and Dales, OH | Stark | |
| 7. | | | Hills and Dales, OH | Stark | |
| 8. | | | Hills and Dales, OH | Stark | |
| 9. | | | Hills and Dales, OH | Stark | |
| 10. | | | Hills and Dales, OH | Stark | |
| 11. | | | Hills and Dales, OH | Stark | |
| 12. | | | Hills and Dales, OH | Stark | |
| 13. | | | Hills and Dales, OH | Stark | |
| 14. | | | Hills and Dales, OH | Stark | |
| 15. | | | Hills and Dales, OH | Stark | |
| 16. | | | Hills and Dales, OH | Stark | |
| 17. | | | Hills and Dales, OH | Stark | |

## Circulator Statement
*Must be completed and signed by the circulator.*

I, [ Michael Biselth ], declare under penalty of election falsification that I reside at the address
Printed Name of Circulator

appearing below my signature; that I am the circulator of the foregoing petition containing ___5___ signatures;
Number

that I witnessed the affixing of every signature; that all signers were to the best of my knowledge and belief

qualified to sign; and that every signature is to the best of my knowledge and belief the signature of the person

whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code.

**WHOEVER COMMITS ELECTION
FALSIFICATION IS GUILTY OF A
FELONY OF THE FIFTH DEGREE**

_____
Signature of Circulator

| 2400 Brentwood Rd NW |
Permanent Residence Address

| Hills and Dales | OH | 44709 |
City or Village   State   Zip Code

| Signature | Voting Residence, Street Number and Address | City, Village or Township | County | Date of Signing |
|---|---|---|---|---|
| 1. *(signature)* | 2445 B | Hills and Dales, OH | Stark | |
| 2. *(signature)* | 2445 BRENTWOOD RD | Hills and Dales, OH | Stark | Oct. 22ᵗʰ, 2019 |
| 3. Kayla Shaheen | 2927 Brentwood Rd | Hills and Dales, OH | Stark | 10/22/19 |
| 4. *(signature)* | 2445 Brentwood | Hills and Dales, OH | Stark | 10/22/19 |
| 5. *(signature)* Phillips | 2845 Dunkeith Dr. | Hills and Dales, OH | Stark | 10/22/19 |
| 6. | | Hills and Dales, OH | Stark | |
| 7. | | Hills and Dales, OH | Stark | |
| 8. | | Hills and Dales, OH | Stark | |
| 9. | | Hills and Dales, OH | Stark | |
| 10. | | Hills and Dales, OH | Stark | |
| 11. | | Hills and Dales, OH | Stark | |
| 12. | | Hills and Dales, OH | Stark | |
| 13. | | Hills and Dales, OH | Stark | |
| 14. | | Hills and Dales, OH | Stark | |
| 15. | | Hills and Dales, OH | Stark | |
| 16. | | Hills and Dales, OH | Stark | |
| 17. | | Hills and Dales, OH | Stark | |

## Circulator Statement

*Must be completed and signed by the circulator.*

I, Roberta Drewes, declare under penalty of election falsification that I reside at the address
Printed Name of Circulator

appearing below my signature; that I am the circulator of the foregoing petition containing __4__ signatures;
Number

that I witnessed the affixing of every signature; that all signers were to the best of my knowledge and belief

qualified to sign; and that every signature is to the best of my knowledge and belief the signature of the person

whose signature it purports to be or of an attorney in fact acting pursuant to section 3501.382 of the Revised Code.

**WHOEVER COMMITS ELECTION FALSIFICATION IS GUILTY OF A FELONY OF THE FIFTH DEGREE**

Roberta A. Drewes
Signature of Circulator

2445 Strathmore Dr. NW
Permanent Residence Address

| Hills and Dales | OH | 44708 |
|---|---|---|
| City or Village | State | Zip Code |

# EXHIBIT C

11-262-19     DR. PERDUK MOVED THE ADOPTION OF THE FOLLOWING RESOLUTION:

WHEREAS, Ohio Revised Code ("R.C.") § 3311.242, provided in Amended House Bill 166 of the 133rd General Assembly, which was passed by the Ohio General Assembly and signed into law by Governor Mike DeWine on July 18, 2019 and which became effective on October 17, 2019, created a new process by which electors residing in a school district with territory in an eligible township may institute the transfer of a school district territory; and

WHEREAS, R.C. § 3311.242 creates a fast-track path toward effectuating a school district territory transfer for a township that contains the territory of two or more school districts, essentially without limitations; and

WHEREAS, R.C. § 3311.242 fails to provide any procedural measures to challenge the proposed transfer by either the transferring or receiving school district on the grounds that such transfer will violate the due process and equal protection rights of students, will create, increase and perpetuate racial and socioeconomic segregation, isolation and divides; and

WHEREAS, the passage of R.C. § 3311.242 raises concerns for many school districts throughout Ohio which may be detrimentally affected by the loss of students, significant funding and other resources due to territory transfers that they have no ability to challenge under R.C. § 3311.242; and

WHEREAS, since R.C. § 3311.242 became effective on October 17, 2019, two petitions have been submitted to the District: (1) one on October 29, 2019 demanding a transfer of the Village of Hills and Dales to Jackson Local School District ("Hills & Dales Petition"); and (2) one on November 6, 2019 demanding a transfer of property on Irondale Circle to the North Canton School District ("Irondale Petition");

WHEREAS, R.C. §3311.242 purports to command mandatory performance by the Plain Local School Board to facilitate these two transfers;

WHEREAS, as stated above, the District believes in good faith that R.C. §3311.242 is unconstitutional and violates both federal and state law;

WHEREAS, the District's counsel, Ulmer & Berne, LLP filed a lawsuit in the Southern District of Ohio, Eastern Division, on November 20, 2019 seeking a full adjudication of the constitutionality, legality and enforceability of R.C. §3311.242; and

WHEREAS, any action facilitating transfers under R.C. §3311.242 threatens great harm to the students of the District without any consideration of their best interests or due process and equal protection rights;

NOW THEREFORE

BE IT RESOLVED, that the District hereby tables the Hills & Dales Petition and the Irondale Petition pending the full and final determination, by the federal courts of the United States of America, of the constitutionality and legality of R.C. §3311.242; and

BE IT RESOLVED, that any future petitions under R.C. §3311.242 will be tabled in the same manner for the same reason and purpose, and

BE IT RESOLVED, that the Board President, Superintendent and Treasurer be and hereby are directed to take any additional steps necessary or required to carry out the intent of this resolution.

MS. GUARDADO SECONDED THE MOTION AND THE VOTE RESULTED AS FOLLOWS: YEAS: PERDUK, GUARDADO, HALKIAS, GWIN, AND CAZANTZES. MOTION CARRIED.

X N. Kathleen Jordan

N. Kathleen Jordan
Treasurer/CFO