UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PLAIN LOCAL SCHOOL DISTRICT**
**BOARD OF EDUCATION, et al.,**           :
                                          : Case No: 2:19-cv-05086
    *Plaintiffs,*                        :
                                          :
v.                                        :
                                          : Judge Michael Watson
**GOVERNOR MIKE DEWINE, et al.,**         :
                                          :
    *Defendants.*                        :

## **DEFENDANTS' BRIEF REGARDING STANDING AND RIPENESS**

Frank J. Reed, Jr. (0055234)
Stephen E. Chappelear (0012205)
FROST BROWN TODD LLC
10 West Broad Street, Suite 2300
Columbus, Ohio 43215
Telephone: (614) 464-1211
Fax: (614) 464-1737
freed@fbtlaw.com
schappelear@fbtlaw.com
*Attorneys for Defendants Governor Mike*
*DeWine, Superintendent Paolo DeMaria,*
*and the individual members of the State*
*Board of Education of Ohio*

## INTRODUCTION

The Plain Local School District Board of Education and its four named students (collectively "Plaintiffs") allege that they were harmed by the passage of a statute and that they will be harmed by the outcome of a possible future election. However, Plaintiffs have not suffered a cognizable legal harm by the passage of the statute and the election has not yet been held. For these reasons, Plaintiffs lack standing to bring their claims, and these claims are not ripe for adjudication.

## BACKGROUND

Plaintiffs fundamentally mischaracterize the "inevitability" of the transfers under the challenged statute. (Plaintiffs' Brief Regarding Standing and Ripeness ("Plaintiffs' Brief"), Doc. 19). Plaintiffs allege that the two transfer requests that they have received "will inevitably result in the effectuation of the proposed transfers." (Plaintiffs' Brief, Doc. 19, p. 2). This allegation ignores important elements of R.C. § 3311.242 that make the outcome of these petitions far from inevitable.

First, R.C. § 3311.242(D) requires the proposed transfer to be placed on the ballot in a general election. If, and only if, the proposal is approved by a majority of the voters casting ballots does the proposed transfer continue along the process outlined in the statute. If the proposal does not receive majority approval, that is the end of the proposal and no transfer takes place. While Plaintiffs allege that these proposals will pass, the results of an election are never certain—regardless of the polling or how many people sign a petition. We need only look as far as the 2016 presidential election to confirm this.

Because of these statutory provisions, Plaintiffs' characterization of the outcome of this process as "inevitable" misses the mark. The potential outcome is much more uncertain.[1]

Plaintiffs' other mischaracterization involves the current posture of this conflict. Plaintiffs lament the application of R.C. § 3311.242 to them through the two petitions, claiming in effect that substituting R.C. § 3311.242 for the procedures outlined in R.C. § 3311.24 denies them Due Process. Yet, R.C. § 3311.242 is a generally applicable law passed by the state legislature that applies to any territory within any eligible township, not merely to Plaintiffs. To the extent that R.C. § 3311.242 is being applied to territory within the Plaintiff School District, that was the decision of private citizens, like Defendant Hills & Dales, to transfer territory to another district, pending the results of the community's vote on the proposal at an election. Thus, Plaintiffs' characterization of this suit as a "pre-enforcement" suit is misleading. The State of Ohio is not threatening to enforce this transfer statute against Plaintiffs. Private citizens are attempting to use this duly enacted statute to further true local control of education and to empower parents in directing the education of their children. To be sure, Plaintiffs' suit is less "pre-enforcement," but it is certainly "pre-election," seeking to prematurely halt the democratic process.

## **LEGAL ARGUMENT**

Article III of the U.S. Constitution limits the jurisdiction of the federal courts to concrete cases and controversies. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). The doctrines of standing and ripeness ensure that suits brought in federal court are brought by a

---

[1] Despite Plaintiffs' arguments, Plaintiffs seem to implicitly understand that the ultimate outcomes of these proposals are uncertain. Plaintiffs' language regarding the process and its outcome oscillates between fatalism and recognizing that there is uncertainty regarding the outcome here. Plaintiffs state that the transfer "will ultimately" or "will inevitably" occur and that the outcome is "all but certain" and "virtually inevitable." Yet, Plaintiffs also "assum[e]" with "near certainty" that the transfers will come to pass "at some point in time."

3

proper party in interest and at the proper time. If a suit is not brought by the proper party, the party lacks standing, and the Court should dismiss the suit. If a suit is not brought at the proper time, it is unripe, and it should also be dismissed. The party invoking federal jurisdiction bears the burden of establishing both standing and ripeness. *Id.* at 158; *Dealer Computer Servs., Inc. v. Dub Herring Ford*, 623 F.3d 348, 354 (6th Cir. 2010).

I. **PLAINTIFFS' CLAIMS ARE NOT RIPE.**

The basic rationale of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1977). The Supreme Court has outlined a two-factor test for determining if a dispute is ripe for judicial adjudication: (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Texas v. United States*, 523 U.S. 296, 301 (1998) (quoting *Abbott Labs.*, 387 U.S. at 149). Here, both factors weigh towards finding that Plaintiffs' claims are unripe.

    A. **Because Plaintiffs' claims depend on the outcome of two uncertain events, including the results of an election, Plaintiff's claims are currently unfit for judicial review.**

Under the first factor, courts look to whether the issues are purely legal or whether factual development is required to properly adjudicate the claims. *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 581 (1985). Here, the claims are not purely legal in nature and cannot be adjudicated until further facts develop. "Will these transfers ultimately happen?" is still an insurmountable factual question that needs to be answered before Plaintiffs' claims shift away from being remote and abstract to being purely legal. Given the uncertainty built into R.C. § 3311.242, since it depends both on the results of a general election and the creation of a formal agreement, the answer to this question is unclear. Plaintiffs' claims do not become ripe until this

question is answered. For example, without knowing if the transfers will take place, it is impossible to say if Plaintiffs will be deprived of a protected property or liberty interest to trigger Due Process;[2] without knowing the result of the election, it is impossible to say whether those enacting the Hills & Dales transfer were motivated by racially discriminatory intent.

Courts typically find constitutional challenges to referendums premature and therefore unripe when they are brought prior to the election. *See, e.g.*, *Nevada Rest. Ass'n v. Pest Comm.*, 2008 WL 8225546, at *4 (D. Nev. 2008); *Filo Foods LLC v. City of SeaTac*, 2013 WL 6095551, at *3 (W.D. Wash. 2013); *State ex rel. Cramer v. Brown*, 454 N.E.2d 1321, 1322 (Ohio 1983) ("It is well-settled that this court will not consider, in an action to strike an issue from the ballot, a claim that the proposed amendment would be unconstitutional if approved, such claim being premature.").The U.S. Sixth Circuit has held that the proper course of action when the constitutionality of a referendum is challenged is to "allow[] the election to proceed and rule[] on the validity of the measure after its passage." *Ranjel v. City of Lansing*, 417 F.2d 321, 325 (6th Cir. 1969).

In *Ranjel*, the Court overturned a lower court's decision enjoining a referendum on spot-zoning from being placed on the ballot. *Id.* The lower court had held that the referendum would violate the Thirteenth and Fourteenth Amendment rights of the Plaintiffs. *Id.* at 322. However, the Court determined that the claims, because they had been brought prior to the election, had not been brought at the proper time. For this reason, the Court reversed the lower court's decision and remanded the case with instructions to dismiss the complaint. *Id.* at 325.

---

[2] Plaintiffs' arguments that the enactment of R.C. § 3311.242 deprived them of Due Process by changing the procedures for a territory transfer are without merit since R.C. § 3311.242 is a generally applicable statute passed by the Ohio State Legislature. *See Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.").

The procedures of R.C. § 3311.242 are akin to those for a referendum or ballot initiative. Both begin with a petition and then progress to a vote in an election. *See generally* R.C. § 3519.01. Until the proposals at issue here are voted on an election, Plaintiffs' claims are speculative and premature, just like the claims in *Ranjel*.

Until the outcomes of these transfer petitions are certain, Plaintiffs' claims are "speculative and hypothetical" such that "no concrete controversy is presented." *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 76 (1974). Contrary to Plaintiffs' claims otherwise, the outcome of R.C. 3311.242 is not predetermined and there is not yet a concrete factual situation before this Court. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 739 (1998) (finding that an environmental group's challenge was not ripe when the administrative policy had not been fully applied to any individual, modifications in the challenged policy were still possible, and the plaintiff failed to demonstrate that it was required to modify its behavior or face future adverse consequences).

> **B. Plaintiffs' claims are also unripe because of the lack of harm to Plaintiffs if this Court declines to hear their claims at this time.**

For the second factor in determining ripeness, courts look to how significant of a hardship the parties will experience if the Court refuses to adjudicate the dispute. If this Court denies review of Plaintiffs' claims at this time, Plaintiffs will suffer minimal, if any, hardship.

The harms that Plaintiffs allege revolve around the outcomes of the proposed transfers—if or when they become effective. These transfers are not inevitable and their potential outcome is uncertain. At this moment, it is impossible to say with certainty that Plaintiffs will suffer the harms they have alleged because the transfers themselves are not guaranteed. Plaintiffs ask this Court to assume that the proposals will be approved by the electors at an election without any evidence.

6

Until these transfers occur, the only arguable harm that Plaintiffs will experience stems from the Plaintiff Board's obligations under R.C. § 3311.242. Under this statute, the board of education that receives a proposal is required to file it with the State Board and to certify it to the county board of elections. R.C. § 3311.242(B)-(C). These are, at most, minimal hardships. Where a party will suffer only a minimal hardship from a court's determination that their claims are not ripe, courts find that this factor weighs in favor of dismissing the claims. *See, e.g.*, *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967) (finding that the Plaintiff's minimal hardship in allowing an inspector into its facility was insufficient to justify ripeness of Plaintiff's claims where the Plaintiff's primary conduct was unaffected by the challenged regulation).

Ultimately, R.C. § 3311.242 and the pending transfer proposals do not impact Plaintiffs' primary conduct and their impact is minimal. Because of this, the hardship prong of the ripeness analysis mediates towards finding Plaintiffs' claims unripe. Given that Plaintiffs' claims would benefit from further factual development and Plaintiffs will not suffer significant hardship if this Court denies review at this time, the Court should dismiss Plaintiffs' claims as unripe.

### C. *Kardules v. City of Columbus* does not affect the conclusion that Plaintiffs' claims are currently unripe.

In *Kardules v. City of Columbus*, 95 F.3d 1335 (1996), the Court held that a challenge to an agreement between the City of Columbus and the Village of New Albany was ripe. At issue was a contract in which the City of Columbus would increase the cost of utilities to the Village of New Albany if its citizens voted to merge with another township. Plaintiffs from the Village claimed that the contract was unconstitutionally denying them their right to meaningfully vote, because it would impact their decision on whether to merge with the other township.

In *Kardules*, two facts were essential to the Court's decision to find that the claim was ripe. First was the fact that, although there were additional steps necessary to get the merger on

the ballot before it could be voted on, those steps were to be taken exclusively by a committee elected by the voters to effectuate the merger. As the Court stated, "given the fact that the commission members, almost by definition, were all in favor of merger, it was highly probable that they would complete their task." *Id.* at 1344. Second was the fact that the Village Plaintiffs picked "the 'most ripe' time to file their complaint by waiting until after the commission was formed but acting before the voters determined the fate of the merger proposal." *Id.* at 1346. Thus, the Court held that the Village Plaintiffs brought the claim at the right time when it was brought after the last discretionary step that was in doubt based on the facts and before the ultimate harm to the Plaintiffs could occur.

In the present case, Plaintiffs' claims are distinguishable on both essential facts. First, unlike the process in *Kardules,* which progressed from all of New Albany's voters down to a select few people who were chosen specifically to complete the transfer, the reverse happens under R.C. § 3311.242. The process begins with 10% of the qualified electors filing a petition and then expands to include all of the qualified electors when the proposal is placed on the ballot in an election. Because of this, unlike in *Kardules*, the outcome of the process is far less certain as its fate will be determined by the population at large. In addition, the qualified electors are not the only group who have a say in whether a proposal will take effect. The receiving board of education also has discretion on whether a proposal will go forward. Here, Plaintiffs have not alleged any facts indicating that the receiving boards of education will choose to enter into formal agreements accepting the proposals. Thus, the same logical inference that the procedural steps required are highly probable to take place cannot be drawn here.

Second, Plaintiffs here have not chosen the most ripe time to bring their suit. At issue in *Kardules*, was the challenged agreement's impact on the Village's election. Because of this, the

Court determined that the claims were ripe for adjudication before the election. Here, however, the election itself is one of two remaining crossroads in time that Plaintiffs allege may lead to their harm, depending on which paths are taken. As such, the most ripe time for Plaintiffs would be after the electors vote on the proposals. In *Kardules*, the harm alleged was the impact on the election; here, the election itself is what will allegedly lead to Plaintiffs' harm, contingent on the election's outcome. This is thus not the most ripe time for Plaintiffs' claims. For these reasons, the Court should dismiss Plaintiffs' claims as unripe.

## II. PLAINTIFFS LACK STANDING.

In addition to Plaintiffs' claims being unripe, Plaintiffs lack standing to bring these claims. To establish standing, Plaintiffs must "clearly… allege facts demonstrating" that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotations omitted). Plaintiffs are required to meet all three elements in order to establish standing. Here, Plaintiffs cannot meet the first essential element; therefore, their claims should be dismissed.

### A. Plaintiffs have not suffered an injury in fact to a cognizable legal interest from either the passage of R.C. § 3311.242 or the current transfer proposals that it has received.

The "[f]irst and foremost" of standing's three elements concerns whether Plaintiffs have suffered an injury in fact. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998). An injury in fact is established when a plaintiff shows they have "suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (*quoting Lujan v. Defs. of Wildlife*, 504

9

U.S. 555, 560 (1992). Here, because the discretionary steps of R.C. § 3311.242 have not played out—including the required general election—Plaintiffs alleged harms based on the application of the statute are currently conjectural. In addition, the other harms Plaintiffs allege based on the passage of R.C. § 3311.242 are not harms to any legally protected interests. Plaintiffs' alleged harms are therefore insufficient to establish standing at this time.

Plaintiffs' alleged harms stemming from the passage of R.C. § 3311.242 do not constitute an invasion of any legally protected interests of the Plaintiffs. First, Plaintiffs allege that the passage of R.C. § 3311.242 caused them to suffer an injury to their procedural due process rights because it created an alternative process, outside the requirements of R.C. § 3311.24, by which individuals could transfer territory from one district to another. However, this is not a cognizable Due Process injury. The Ohio Legislature passed R.C. § 3311.242 and it applies generally to any territory in all "eligible townships." R.C. § 3311.242(A)(1). Because the law does not apply solely to territory within the Plaintiff School District, Plaintiffs did not have any Due Process rights that were infringed by the passage of R.C. § 3311.242, even if they are ultimately affected by it. *See Bi-Metallic*, 239 U.S. at 445. As the Sixth Circuit has stated, "there is a preliminary inquiry [in procedural due-process cases]: Does the state action involve the kind of individualized determination that triggers due-process protections in the first place?" *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017). Here, R.C. § 3311.242 does not single Plaintiffs out for any individualized determination, and Plaintiffs have not suffered any cognizable harm to their Due Process rights in its passage. *Compare Id.* at 347-348, *with Seguin v. City of Sterling Heights*, 968 F.2d 584, 586 (6th Cir. 1992).

For their second alleged harm from the passage of R.C. § 3311.242, Plaintiffs allege that the passage of R.C. § 3311.242 violated their equal protection rights to be free from intentional

racial discrimination. Yet, Plaintiffs fail to allege any facts related to the passage of R.C. § 3311.242 that indicate the Ohio Legislature or Governor Mike DeWine were motivated to pass this statute by an improper intent to discriminate based on race. Plaintiffs allege only that the application of R.C. § 3311.242 to them in the specific situation created by the Hills & Dales petition will have a racial disproportionate effect. Courts have been adamant that a racial disproportionate impact is insufficient to establish a violation of the Equal Protection Clause. *Washington v. Davis*, 426 U.S. 229, 239 (1976). Because Plaintiffs have not alleged any facts to indicate that there was racial animus in the passage of R.C. § 3311.242, they cannot establish that they have suffered any harm under the Equal Protection Clause stemming from its passage.[3]

Plaintiffs' other alleged harms involve the application of R.C. § 3311.242 to them through the private actions of those who filed petitions of transfer with the Plaintiff School District. Plaintiffs claim harms both from the petitions themselves and from the potential outcomes of the petitions. But Plaintiffs have not suffered any harm from the petitions because they likely do not have any protected property interests in the territory to be transferred. *See, e.g.*, *Gorrell v. Bevans*, 66 Colo. 67, 69 (1919) ("The territory of the district is not its property, but merely within its 'jurisdiction,' if we may so use that word. The Legislature changes the boundaries of counties and other quasi municipal corporations at will, without violating anybody's constitutional rights, which it could not do if the land were property. There is,

---

[3] In addition, to the extent that Plaintiffs challenge the distinction that R.C § 3311.242 draws between eligible and ineligible townships, such a distinction (1) does not impose any barrier on Plaintiffs since it creates an alternative process for territory transfers and (2) triggers rational basis review since it does not discriminate based on any protected classifications. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973). It is beyond doubt that R.C. § 3311.242 is rationally related to a legitimate governmental interest. R.C. § 3311.242 allows communities to choose for themselves which schools their children will attend. This promotes at least two compelling governmental interests. First, it promotes the fundamental right of parents to direct the education of their children by allowing them the ability to impact which school they will attend. *See* Pierce v. Soc'y of Sisters, 268 U.S. 510, 535 (1925). Second, it promotes the important value of local control of education by empowering communities to choose for themselves, through the democratic process, which schools they will be associated with. *See Zelman v. Simmons-Harris*, 536 U.S. 639, 644 (2002).

therefore, no question of due process of law concerning the transfer of the [district's] territory [to another district].").

Even if Plaintiffs do have a property interest here, they have not suffered a cognizable legal harm because they have not been denied any process. R.C. § 3311.242 creates an alternative transfer process under Ohio law, and that process provides Plaintiffs with ample process prior to any alleged deprivation of a potential property or liberty interest. Under this process, the Plaintiff School District is provided with notice of the proposal. R.C. § 3311.242(C). Thus, any potential property interest that the Plaintiff School District may have in the territory to be transferred is fully protected by this process.

Of course, to the extent that Plaintiffs allege harms from the outcomes of the transfer petitions, these harms are conjectural and hypothetical. The outcomes of these processes are not guaranteed. In arguing that they will be harmed by these proposals, Plaintiffs rely solely on one of four possible outcomes to defend their claims. Plaintiffs' alleged harms are thus conjectural and hypothetical—they may or may not happen at all. Because of this, Plaintiffs lack standing to bring any claims based on the ultimate outcome of these proposals.

Ultimately, Plaintiffs have not alleged that they have "suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548. Therefore, Plaintiffs lack standing, and their claims should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' claims are not ripe for judicial review and Plaintiffs lack standing to bring this suit. Accordingly, Defendants Governor Mike DeWine, Superintendent Paolo DeMaria, and the individual members of the State Board of Education of Ohio respectfully ask this Court to decline to exercise jurisdiction over this case.

Respectfully submitted,

*/s/ Frank J. Reed, Jr.*

Frank J. Reed, Jr. (0055234)
Stephen E. Chappelear (0012205)
FROST BROWN TODD LLC
10 West Broad Street, Suite 2300
Columbus, Ohio 43215
Telephone: (614) 464-1211
Fax: (614) 464-1737
freed@fbtlaw.com
schappelear@fbtlaw.com
*Attorneys for Defendants Governor Mike DeWine, Superintendent Paolo DeMaria, and the individual members of the State Board of Education of Ohio*

## **CERTIFICATE OF SERVICE**

A true and accurate copy of the foregoing has been served on all parties via their counsel of record through the Court's ECF system this 16th day of December 2019.

*/s/ Frank J. Reed, Jr.*
Frank J. Reed, Jr. (0055234)

0135351.0725696  4826-8713-5151v2